**PORTLAND RETAIL DRUGGISTS AS-SOCIATION, etc., Plaintiff-Appellant,**

v.

**KAISER FOUNDATION HEALTH PLAN, et al.,
Defendants-Appellees.**

Nos. 78–2465, 78–2466.

United States Court of Appeals,
Ninth Circuit.

Argued Dec. 3, 1980.

Submitted Dec. 17, 1980.

Decided Nov. 30, 1981.

642

Henry Kane, Beaverton, Or., Roger Tilbury, Portland, Or., for plaintiff-appellant.

Max Thelen, Jr., Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for defendants-appellees.

Before GIBSON,* Senior Circuit Judge, SNEED and POOLE, Circuit Judges.

* Hon. Floyd R. Gibson, Senior United States Circuit Judge, for the Eighth Circuit, sitting by designation.

POOLE, Circuit Judge:

Several retail pharmacies, and a nonprofit trade association to which some of them belong, appeal the orders of the district court disposing of all of their claims brought in two consolidated antitrust actions. We vacate the entry of judgment and remand for further proceedings.

## I

This litigation began as two separate suits, one filed in the Northern and the other in the Central District of California in January 1977. Each complaint is substantially identical and charges appellees with violations of three distinct antitrust provisions: (1) Section 2(f) of the Robinson-Patman Anti-Price Discrimination Act, 15 U.S.C. § 13(f), by knowingly inducing or receiving discriminatorily low prices from pharmaceutical suppliers; (2) Section 2 of the Sherman Act, 15 U.S.C. § 2, by attempting to monopolize the retail drug market; (3) Section 1 of the Sherman Act, by unlawfully tying health products and services for sale. Class allegations were pleaded.

The various appellees together make up "health maintenance organizations," operating under the Kaiser-Permanente Medical Care Program (Kaiser). A health maintenance organization, like the typical health insurer, in an actuarial sense spreads the financial cost of health services by charging each of its members annual dues. Unlike typical insurance, the organization itself provides health services. Among the services offered by Kaiser is a drug benefit plan which permits members to obtain pharmaceutical products from Kaiser-operated pharmacies on favorable terms. Existence

of the plans, and their perceived effect on the retail pharmacy business of appellants, led to the two lawsuits.

On April 11, 1977, the Judicial Panel on Multidistrict Litigation consolidated these cases in the Central District of California where they were assigned to Judge Hill. On May 23, 1977, the court convened a status conference aimed at lending some procedural order to this complex litigation. That conference produced a pretrial order, filed by the court on July 26, 1977.

Initially, the pretrial order classified these cases as complex and directed them to be conducted pursuant to the *Manual for Complex Litigation.* Memorialized in the order was Kaiser's intention to file with the court Fed.R.Civ.P. Rule 12(b) motions to dismiss on several grounds. Although these motions were not described in the order, the primary allegations asserted as grounds for dismissal (and those relevant on this appeal) were that: (1) Kaiser engages in the business of insurance and therefore enjoys antitrust immunity by virtue of the McCarran-Ferguson Act, 15 U.S.C. § 1012(b);[1] (2) Appellants' Robinson-Patman cause of action failed to state a claim because Kaiser is exempt from liability pursuant to the Robinson-Patman Price Discrimination Act, 15 U.S.C. § 13c; (3) Appellants' attempt to monopolize cause of action failed to state a claim; (4) Appellants' tying cause of action failed to state a claim.[2]

The pretrial order indicated that the district court would first consider the 12(b) motions to dismiss at a hearing set for January 23, 1978. Assuming appellants' complaint should withstand these tests of its sufficiency, a hearing was then sched-

---

1. Section 2 of the McCarran-Ferguson Act, 15 U.S.C. § 1012, reads:

   (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

   (b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided,* That after

June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

2. These characterizations of the motions are essentially Kaiser's.

uled a week later on appellants' motion to certify a class which was to be shortly filed.

The remainder of the order set out a briefing schedule. On August 1, 1977, Kaiser was to file the "Rule 12(b) motion and supporting papers based on the McCarran-Ferguson Act exemption and shall file [the] remaining Rule 12(b) motions without supporting papers." On November 1, 1977, Kaiser was to file supporting papers in connection with all the motions other than McCarran-Ferguson which it had noticed on August 1. Limited discovery was permitted by the order "relating to defendant's aforementioned Rule 12(b) motions and plaintiff's motion to certify a class."

As ordered, Kaiser filed its "Notice of Motion . . . to dismiss and to strike under Fed.R.Civ.P. Rule 12." Although styled a Rule 12 motion to dismiss, the final sentence provided: "To the extent matters outside the pleadings are presented to, and not excluded by the Court, the motions shall be treated as ones for summary judgment pursuant to the last sentence of Fed.R.Civ.P. Rule 12(b)."

Accompanying this motion was the "Affidavit of Scott Fleming in support of defendants' Rule 12(b) motions and alternative motions for summary judgment." That affidavit is a general discussion of the Kaiser program, organization and operations, including the drug benefit program. It was submitted pursuant to the discovery order as a supporting paper in connection with the McCarran-Ferguson motion.

The limited discovery authorized in the order proceeded. Appellants propounded interrogatories, took two depositions and obtained production of numerous Kaiser documents. In July, appellants returned to the district court seeking discovery of pricing information from Kaiser. The justification offered for the request was appellants' claim that if Kaiser did not receive significant discounts on drugs purchased, or received discounts only as to certain drugs, the case might be dropped or the class of plaintiffs narrowed. The request for broadened discovery was denied; for purposes of all pending motions Kaiser conceded that it received price discounts.[3]

On November 1, 1977, Kaiser filed its supporting papers in connection with the remaining motions noticed in August (other than McCarran-Ferguson). Although described in the August notice as motions to dismiss (except for the sentence mentioned above which reserved the possibility of conversion to summary judgment motions), the motions were now clearly labelled in the alternative: for dismissal or summary judgment. In addition, a second affidavit of Scott Fleming was filed dealing particularly with factual issues implicated by Kaiser's newly filed supporting papers.

Appellants responded to Kaiser's motions claiming surprise that matters beyond the pleadings were submitted and reiterating their understanding that only 12(b) motions were to be considered by the court. Nonetheless, two affidavits were filed, executed by Stanley Harman. One was tendered in specific response to the McCarran-Ferguson motion and the other related to the price and contract arrangements by which Kaiser acquired drugs from manufacturers.

The case came on for hearing before the district court on January 23 and 24. At the outset, the court announced that it was prepared to consider matters outside the pleadings in ruling on Kaiser's motions and would therefore proceed as though the motions were for summary judgment under Fed.R.Civ.P. 56. Appellants objected but the district court found that, since August, appellants had been fairly apprised that the motions before the court would be treated as for summary judgment, and that the three-month discovery permitted (until November 1) by the pretrial order was reasonable. The court noted that adequate discovery had been conducted, particularly as to the McCarran-Ferguson defense, and appellants were unable to specify with particularity what additional discovery they needed to undertake.

---

3. Other discovery disputes which have marked this litigation need not be discussed in resolving this appeal.

The district court disposed of this case as follows: First, the court granted, in the alternative, Kaiser's motion to dismiss and entered summary judgment as to each cause of action, concluding that the McCarran-Ferguson Act exempted Kaiser from antitrust liability; Second, the court granted Kaiser's motion for summary judgment as to the Robinson-Patman cause of action (count one), concluding that Kaiser was exempt from liability by virtue of the Robinson-Patman Price Discrimination Act, 15 U.S.C. § 13c; Third, the court granted, in the alternative, Kaiser's motion to dismiss and entered summary judgment as to the claim of attempted monopolization (count two), concluding that appellants had failed to allege or create a material issue of fact revealing predatory conduct on the part of appellees; Finally, the court granted, in the alternative, Kaiser's motion to dismiss and entered summary judgment as to the tying claim (count three), concluding that Kaiser's health benefits amounted to one service and not the two required for a tying offense.

Appellants filed a notice of appeal to this Court and the case is now properly before us for decision. Appellants allege procedural defects in the grant of summary judgment and ask that we order the district court's judgment reversed on the merits.

## II

■ Summary judgment may be properly entered when the record before the court on the motion reveals the absence of any material issue of fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Before summary judgment may be entered against a party, that party must be afforded both notice that the motion is pending and an adequate opportunity to respond. Implicit in the "opportunity to respond" is the requirement that sufficient time be afforded for discovery necessary to develop "facts essential to justify [a party's] opposition" to the motion. Fed.R. Civ.P. 56; see Program Engineering, Inc. v. Triangle Publications, Inc., 634 F.2d 1188, 1193 (9th Cir. 1980); Lucas v. Bechtel Corp., 633 F.2d 757, 759 (9th Cir. 1980); British

Airways Board v. Boeing Co., 585 F.2d 946 (9th Cir. 1978).

Appellants contend that they were denied both notice that summary judgment motions would be considered by the district court and an adequate opportunity to develop facts crucial to opposing those motions.

### A

■ Questions of adequate notice of a summary judgment motion typically arise when the district court announces its intention to consider matters outside the pleadings in ruling on what has been noticed by the moving party as a Rule 12(b)(6) motion to dismiss. When the district court looks outside the pleadings in evaluating a noticed Rule 12(b)(6) motion, the motion must be converted and treated as one for summary judgment under Rule 56. See Lucas v. Bechtel Corp., supra, 633 F.2d at 759. If the conversion occurs unexpectedly, the nonmoving party is left at the disadvantage of being unprepared to respond; hence notice is required. See, e. g., Costen v. Pauline's Sportswear, Inc., 391 F.2d 81, 85 n.5 (9th Cir. 1968). The primary vice of unexpected conversion to summary judgment is that it denies the suprised party sufficient opportunity to discover and bring forward factual matters which may become relevant only in the summary judgment, and not the dismissal, context.

In evaluating the adequacy of notice, this circuit has determined from the record whether the party against whom summary judgment was entered was fairly apprised that the court would look beyond the pleadings and thereby transform the 12(b) motion to dismiss into one for summary judgment. See, e. g., id. In this case, the district court found that appellants were apprised that materials outside the pleadings would be before the court "at least" in August when Kaiser filed its notice of motions and its specific papers relating to the McCarran-Ferguson defense.

■ As to the McCarran-Ferguson motion, we agree that appellants were reasonably notified that matters outside the pleadings were to be considered in connec-

tion with the pending Rule 12(b) motion to dismiss; they were on notice that the three month discovery period should be used to meet the affidavit submitted in connection with the August 1 McCarran-Ferguson motion.

■ That three month period was also sufficient to generate or develop facts relevant to the McCarran-Ferguson issue. Appellants conducted extensive discovery relating to this motion and submitted their own affidavit to the court. Denial of more time to conduct discovery relating to this motion was not an abuse of the district court's discretion. *See British Airways Board v. Boeing Corp., supra.*

■ As to Kaiser's other motions, by the terms of the pretrial order, Kaiser was not required to file supporting papers until November 1, 1977. It was only on that date that the appellants saw the facts Kaiser would rely upon in seeking judgment, as contained in the second affidavit of Scott Fleming and described in the moving papers.

But November 1 was also the date the pretrial order ended discovery. Thus, on the date appellants were fully aware of the character of Kaiser's motions, as they would be argued to the court, and notified in the second Fleming affidavit of many of the facts to be presented, discovery was no longer possible under the court's order.

We think this unusual predicament left appellants at an unfair disadvantage as to all of Kaiser's motions save that in connection with the McCarran-Ferguson Act. That predicament, coupled with the need for caution in summarily adjudicating complex antitrust cases, *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), leads us to conclude that the entry of summary judgment was premature and that the case should be returned to the trial court with additional fact-seeking time.

We emphasize in reaching this conclusion that we express no view on the scope of discovery which should be afforded appellants on remand.[4] The court may exercise its sound discretion to limit the parties to investigation of factual issues critical to such motions for summary judgment which may be before the court or may hereafter be filed. We hold only that the defending party's opportunity to discovery should not be foreclosed by order of the court before the moving party has presented critical factual materials on which he intends to rely and against which a defense is to be mounted.

Because the procedure used to enter summary judgment on all but the McCarran-Ferguson motions did not provide an adequate opportunity for discovery, we vacate the entry of summary judgment as to all issues before the district court save that of the applicability of the McCarran-Ferguson antitrust exemption.

### III

Premature entry of summary judgment does not taint certain of the district court's rulings dismissing appellants' attempt to monopolize and tying counts on the pleadings pursuant to Rule 12(b)(6) and finding Kaiser exempt from antitrust liability under the McCarran-Ferguson Act. We turn to these issues.

### A

Since the district court decision, the Supreme Court has decided *Group Life Health & Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979). In that case, the insured entered into a pharmacy agreement with Blue Shield insurance company which allowed him to purchase drugs from Blue Shield approved pharmacies for $2.00; Blue Shield would make a further payment to the pharmacist. To become an "approved" pharmacy, the druggist had to agree that Blue Shield's contribution

---

4. Appellants have submitted to us factual materials which were not offered in the district court. We have not considered these materials because our function is to review the record before the district court. It is not appropriate for counsel to try to build such a record in this court.

would be the direct cost of the drug to the drugstore. When these agreements between Blue Shield and approved pharmacies were challenged as violative of the antitrust laws, the McCarran-Ferguson defense was invoked. The Court agreed with the Fifth Circuit that the agreements between Blue Shield and the participating pharmacies were not the "business of insurance" so as to be exempt from most antitrust liability under McCarran-Ferguson.

■ As to appellants' first two causes of action, *Royal Drug* requires the conclusion that the McCarran-Ferguson Act does not apply. In these counts, appellants are challenging the contractual arrangements and conditions by which Kaiser acquires drugs from manufacturers, wholesalers and distributors. Conceptually, this is identical to the situation in *Royal Drug*. All that differs is that Kaiser distributes the drugs itself. But that makes no difference because the antitrust violation alleged stems from the arrangement by which Kaiser acquires the drugs.

■ As for the tying cause of action, appellants are challenging conditions Kaiser may or may not place on its relationships with members. Whether those conditions sufficiently partake of the "indispensable characteristic of insurance"—"spreading of risk," recognized in *Royal Drug* as essential for application of the McCarran-Ferguson defense, is a question which we cannot presently decide. *Group Life & Health Ins. Co. v. Royal Drug Co., supra,* 440 U.S. at 212, 99 S.Ct. at 1073. When this case was argued in the district court an expansive perception of the "business of insurance" requirement prevailed in a majority of the circuit courts of appeals. *See, e. g., Proctor v. State Farm Mut. Auto. Ins. Co.,* 561 F.2d 262 (D.C.Cir.1977). Kaiser conducted discovery and prepared its case based on that broad perception of the requirement and accordingly did not prepare itself for the subtleties of the defense now revealed by *Royal Drug. See* L. A. Sullivan, *Recent Antitrust Developments: Defining the Scope of Exceptions, Expanding Coverage, and Refining the Rule of Reason,* 27 U.C.L.A.L.Rev.

265, 288 (1979). Because the issue might well implicate factual matters which Kaiser did not have an opportunity prepare, *id.,* we vacate entry of judgment on the third cause of action based on the McCarran-Ferguson defense and remand for consideration of this issue in light of *Royal Drug.*

### B

The district court alternatively dismissed appellants' Sherman causes of action (two and three of the complaint) for failure to state claims. The court found that no amendments could be made to state claims.

■ Reviewing dismissals, we are limited to an examination of the complaint; must accept all allegations of fact as true; and resolve all doubts in favor of the pleader. *Ernest W. Hahn, Inc. v. Codding,* 615 F.2d 830, 834 (9th Cir. 1980). Mindful of the reluctance of federal courts to dismiss a case such as this on the pleadings, *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976), we proceed with the required review.

### 1.

Appellants' complaint alleges that Kaiser has attempted to monopolize the business of drug sales by coercing drug companies, wholesalers and distributors to grant to Kaiser prices lower than those otherwise available to retail pharmacies. It is further alleged that Kaiser has resold drugs so obtained at prices less than those that could be charged by appellants, to the injury of appellants.

A section 2 attempt to monopolize claim contains three elements: (1) specific intent to control prices or destroy competition in some part of commerce; (2) predatory or anticompetitive conduct directed to accomplishing the unlawful purpose; and (3) a dangerous probability of success. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 652 F.2d 917, at 931 (9th Cir. 1981); *California Computer Products, Inc. v. IBM Corp.,* 613 F.2d 727, 736 (9th Cir. 1979). While these elements are discrete,

they are often interdependent. *Inglis, supra,* at 931.

■ The district court concluded that appellants had failed to allege predatory conduct: a required element of a section 2 claim. Fairly read, the complaint does allege coercive activities by defendants to obtain reduced prices and thereby attempt to gain a monopoly position in the retail drug market. Although the evidence of predation which appellants expect (or hope) to prove is not detailed, antitrust pleadings need not contain great factual specificity. *See, e. g., Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.,* 627 F.2d 919, 924 (9th Cir. 1980).

We find the allegation of coercive attempts to obtain specially-reduced prices sufficient for this complaint to state a possible section 2 claim. It may be that the coercion appellants will prove is of a kind: (1) "forming the basis for a substantial claim of restraint of trade, or (2) conduct that is clearly threatening to competition or clearly exclusionary." *Inglis, supra,* at 933 n. 11. In some cases, "clearly exclusionary conduct" itself may provide the basis for a section 2 claim because it may generate inferences sufficient to satisfy the other elements of the attempted monopolization offense. *See id.; Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc., supra,* 627 F.2d at 925–26; *Gough v. Rossmoore Corp.,* 585 F.2d 381, 390 (9th Cir. 1978). At this pleading stage, it is not possible to test the conduct of Kaiser and determine whether such a section 2 case may have been made. It has been alleged and that is all that concerns us at this time.

### 2.

■ A tying agreement prohibited by section 1 of the Sherman Act exists if three criteria are present: (1) Two distinct products or services are in fact tied such that the products are offered as a single package; (2) The defendant has sufficient economic power in the tying market to impose restrictions in the tied product market; (3) The amount of commerce in the tied product is not insubstantial. *Fortner Enterprises, Inc. v. United States Steel Corp.,* 394

U.S. 495, 499, 89 S.Ct. 1252, 1256, 22 L.Ed.2d 495 (1969); *Moore v. Jas. H. Matthews & Co.,* 550 F.2d 1207, 1212 (9th Cir. 1977). Kaiser contends that no tie exists that appellants may challenge. The complaints allege that Kaiser tied

> the receipt or distribution of over-the-counter and prescription drugs to the purchase of health services from defendants, thus compelling persons receiving health services from or through defendant to obtain drugs from defendants or forego the benefits for which they or their employees had paid defendants.

■ There has been a good deal of confusion in identifying the tied products or services. For purposes of our review of the pleadings, the question is whether appellants could prove any set of facts under the pleadings which would state a section 1 tying claim. We think that this pleading may be fairly read to allege that Kaiser requires customers to buy its drug plan in order to obtain the health plan. That is a classic tie about which, if proved, appellants could complain and we therefore cannot agree that, under no set of facts could they prove illegal tying.

### IV

The judgment of the district court dismissing the second and third causes of action on the pleadings is reversed. Judgment for Kaiser on the first two causes of action, entered based on the McCarran-Ferguson defense is reversed. As to all other bases for the district court's decision, we vacate the judgment and remand this case for further proceedings consistent with this opinion.