PORTSMOUTH SQUARE, INC.,
Plaintiff/Appellant,

v.

SHAREHOLDERS PROTECTIVE COMMITTEE; Palmer York, Jr.; George E. Croke; Eugene J. Marty; Rose Leah Jones; Kenneth R. Scott, Defendants/Appellees.

No. 84–2277.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 10, 1985.

Decided Sept. 9, 1985.

Linda E. Stanley, Dinkelspiel & Dinkelspiel, San Francisco, Cal., Michael S. Polan, Alex A. Harper, San Diego, Cal., for plaintiff/appellant.

Marvin J. Colangelo, Kerner, Colangelo & Imlay, San Francisco, Cal., for defendants/appellees.

Before CANBY and NORRIS, Circuit Judges, and JAMESON *, District Judge.

CANBY, Circuit Judge:

Portsmouth Square, Inc. appeals from an adverse judgment on its claim against the Shareholders Protective Committee—a group of Portsmouth Square minority shareholders—and the individual members of the Committee. Portsmouth Square seeks injunctive and declaratory relief under section 13(d) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78m(d). After several years of litigation, the district court dismissed Portsmouth Square's suit *sua sponte* at the final pretrial conference. Portsmouth Square now challenges both the procedure by which the court entered judgment and the conclusion of law on which the judgment rests. We affirm the district court in all respects.

## I. THE DISMISSAL AT THE PRETRIAL CONFERENCE

We begin by addressing Portsmouth Square's attack on the procedure by which the district court dismissed its claim. At the final pretrial conference, Judge Schwarzer raised *sua sponte* the question whether the plaintiff had stated a section 13(d) claim. He did not specifically notify the parties in advance that he intended to raise the issue. At the conference, the court pressed counsel for Portsmouth Square to show how the facts set forth in the plaintiff's proposed Findings of Fact stated a section 13(d) claim. After a lengthy dialogue with plaintiff's counsel, the court denied a motion for a continuance and indicated that it would enter judgment for the defendant. In its Amended Order and Judgment, the court labelled its action a "judgment on the pleadings treated as a Motion for Summary Judgment under Rules 12(c) and 56 of the Federal Rules of Civil Procedure." For purposes of the judgment, the court accepted the plaintiff's proposed Findings of Fact as true. It concluded that neither those facts nor the evidence set forth in the pretrial conference materials established a cause of action under section 13(d).[1]

---

* The Honorable William J. Jameson, United States District Judge for the District of Montana, sitting by designation.

1. The pretrial conference materials, submitted by both parties pursuant to a pretrial order, included trial memoranda stating the facts expected to be proved at trial and the law applicable to those facts. The parties also submitted statements summarizing the expected testimony of all witnesses; copies of all exhibits that they

Portsmouth Square argues that the district court had no power to enter a summary judgment *sua sponte*. It also claims that the court violated Rule 56(c), which requires at least 10 days notice of a hearing on a summary judgment motion, and Local Rule 220–2 of the Northern District of California, which requires 28 days notice. Furthermore, Portsmouth Square tells us, the court denied it an opportunity to respond with affidavits and other evidence in support of its claim. Portsmouth Square implies that the district court and opposing counsel have obscured the absence of due process by characterizing the result as a Rule 12(c) judgment on the pleadings treated as a summary judgment. We reject all of these arguments. We are satisfied that the district court proceedings met the requirements of the Federal Rules and the demands of due process.

■ Under certain limited circumstances a district court may issue summary judgment on its own motion. For example, *sua sponte* summary judgment is appropriate where one party moves for summary judgment and, after the hearing, it appears from all the evidence presented that there is no genuine issue of material fact and the *non-moving* party is entitled to judgment as a matter of law. *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir.1982). We have also allowed summary judgment where a district court, on its own initiative, converted a Rule 12 motion to dismiss into a summary judgment motion by considering pertinent documents that the parties had not presented with their pleadings or motions. *Townsend v. Columbia Operations*, 667 F.2d 844, 848–50 (9th Cir.1982).

■ We believe that the district court has similar limited authority to grant summary judgment *sua sponte* in the context of a final pretrial conference. One purpose

of the Rule 16 pretrial conference procedure is to promote efficiency and conserve judicial resources by identifying litigable issues prior to trial. Fed.R.Civ.P. 16 advisory committee note (1983).[2] If the pretrial conference discloses that no material facts are in dispute and that the undisputed facts entitle one of the parties to judgment as a matter of law, a summary disposition of the case conserves scarce judicial resources. The court need not await a formal motion, or proceed to trial, under those circumstances.

■ Where the district court grants summary judgment in the absence of a formal motion, we review the record closely to ensure that the party against whom judgment was entered had a full and fair opportunity to develop and present facts and legal arguments in support of its position. *Cool Fuel v. Connett*, 685 F.2d at 312. A litigant is entitled to reasonable notice that the sufficiency of his or her claim will be in issue. *See Townsend v. Columbia Operations*, 667 F.2d at 849; *Portland Retail Druggists Assoc. v. Kaiser Foundation Health Plan*, 662 F.2d 641, 645 (9th Cir.1981). Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment. *Portland Retail*, 662 F.2d at 645. Having reviewed this record, we conclude that Portsmouth Square was afforded a full and fair opportunity to make its case.

■ Although it would have been preferable for the district court specifically to notify the parties that it intended to consider granting a summary judgment at the pretrial conference, Portsmouth Square was adequately notified that it might have to defend the sufficiency of its claim. The merits of the parties' claims and defenses are a legitimate subject of discussion at a

planned to introduce; and citations to relevant portions of interrogatories and deposition testimony.

**2.** Professor Wright notes that summary judgment is directed toward ending litigation before trial, while the pretrial conference generally facilitates trial. 6 Wright and Miller, *Federal*

*Practice and Procedure: Civil* § 1529 (1971). But he also believes that "the use of Rule 16 to determine whether there are any issues remaining in the case that justify proceeding to a full trial on the merits is not inconsistent with the general purpose of Rule 16." *Id.* at 622–23.

pretrial conference. Fed.R.Civ.P. 16(c)(1).[3] Throughout the course of this litigation the parties have disputed whether Portsmouth Square states a section 13(d) cause of action, and counsel should not have been surprised that the issue arose at the conference. Portsmouth Square also had a full opportunity to develop the facts in support of its case. Its discovery was complete at the time of the pretrial proceedings. *Compare Portland Retail,* 662 F.2d at 646 (cause remanded for further discovery where defendants filed affidavits in support of their motion to dismiss after plaintiff's opportunity to discover controverting facts had ended).

Moreover, Portsmouth Square had a full opportunity to present to the district court its section 13(d) theory and the facts supporting that theory. The court made clear from the outset of the pretrial conference that it intended to explore the merits of the plaintiff's claim, and that it was specifically concerned about whether the corporation could establish a violation of section 13(d).[4] In that connection the court considered all the evidence that Portsmouth Square

planned to present at trial.[5] It repeatedly pressed Portsmouth Square's counsel to show that a genuine issue of material fact remained for trial, or that the facts set forth in the proposed Findings stated a claim. The court reached its decision only when it had become clear that counsel could not make the necessary showing.

On appeal Portsmouth Square presents essentially the same arguments in support of its section 13(d) claim that it presented in the district court. We now consider the merits of those arguments.

## II.  THE SECTION 13(d) CLAIM

Section 13(d) requires holders of relatively large amounts of a corporation's stock, when they acquire more of the same class of the stock, to file a statement with the SEC disclosing their intentions. Section 13(d)(1), 15 U.S.C. § 78m(d)(1).[6] The disclosure requirement applies to any person who owns more than five per cent of the particular class of the issuer's stock after the new acquisition.[7]

---

**3.** Rule 16. Pretrial Conferences; Scheduling; Management

    \*    \*    \*    \*    \*    \*

    (c) Subjects to be Discussed at Pretrial Conferences. The participants at any conference under this rule may consider and take action with respect to
    (1) the formulation and simplification of the issues, including the elimination of frivolous claims or defenses....

**4.** The fact that the court expressly considered the merits of Portsmouth Square's legal theory at the hearing distinguishes this case from *Choudhry v. Jenkins,* 559 F.2d 1085 (7th Cir.), cert. denied 434 U.S. 997, 98 S.Ct. 634, 54 L.Ed.2d 491 (1977), and *Twin Cities Federal Savings and Loan Assoc. v. Transamerica Insurance Co.,* 491 F.2d 1122 (8th Cir.1974), on which the plaintiff relies. In *Choudhry* the court declared at a hearing on the plaintiff's motion for a temporary restraining order that it did not wish to consider the merits of the case, and then two weeks later entered an order granting a summary judgment for the defendant on the merits. Similarly, in *Twin Cities* the parties submitted specific questions of law to the court pursuant to a local rule, and the court proceeded to find facts and decide questions of law not submitted to it in an effort to dispose of the case.

**5.** The plaintiff appears to argue that the court did not consider this material in reaching its

decision because not all of it is formally part of the record. We are unable to make sense of this argument. The court properly took into account the trial briefs, the witness summaries, and the discovery excerpts as "matters outside the pleadings." *See* Fed.R.Civ.P. 12(c).

**6.** The statute provides in pertinent part:

Any person who, after acquiring directly or indirectly the beneficial ownership of any equity security of a class which is registered pursuant to section 12 of this title, ... is directly or indirectly the beneficial owner of more than 5 per centum of such class shall, within ten days after such acquisition, send to the issuer of the security at its principal executive office, by registered or certified mail, send to each exchange where the security is traded, and file with the Commission, a statement containing such ... information as the Commission may by rules and regulations prescribe as necessary and appropriate in the public interest or for the protection of investors....

Section 13(d)(1), 15 U.S.C. § 78m(d).

**7.** The information required in the disclosure statement (designated Schedule 13(d) by the SEC) includes, among other things, a statement of the person or group's aggregate interest in securities of the issuer. The disclosure statement must describe the purposes of the transac-

In section 13(d)(3), Congress imposed the section 13(d) disclosure obligation on groups of shareholders who "act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding or disposing of securities of an issuer." 15 U.S.C. 78m(d)(3). The group is deemed a "person" for purposes of section 13(d). It therefore must file a Schedule 13(d) if the aggregate ownership of those who participate exceeds five percent of the relevant class of securities.

The SEC has interpreted section 13(d)(3) to encompass "two or more persons (who) *agree* to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer." Rule 13d–5(b)(1), 17 C.F.R. § 240.13d–5(b)(1) (emphasis added). Under the SEC interpretation, section 13(d) applies even if none of the parties to the agreement has actually purchased any securities in connection with the agreement. The group formed by the agreement is deemed to have acquired beneficial ownership of all securities beneficially owned by any group member on the date of the agreement. *Id.*

■ The question now before us is whether the disclosure requirement of section 13(d) applies to the Shareholders Protective Committee.[8] Because the district court's disposition of the case amounts to a summary judgment, we set forth the facts in the light most favorable to Portsmouth Square, against which summary judgment was granted. *Ybarra v. Reno Thunder-bird Mobile Home Village,* 723 F.2d 675, 677 (9th Cir.1984).

Five shareholders of Portsmouth Square, Inc. formed the Committee in 1979. Portsmouth Square is a publicly held California corporation, with its stock registered pursuant to section 12(g) of the Securities Exchange Act, 15 U.S.C. 78*l* (g). Together the members of the Committee hold, and at all times since they formed the Committee have held, more than 5% of the outstanding shares of Portsmouth Square stock.

The Committee was organized to oppose a transaction in which the Ramapo Corporation acquired 53.3% of the outstanding shares of Portsmouth Square and became Portsmouth Square's majority shareholder. On October 30, 1979, a member of the Committee, Palmer York, wrote a letter to all Portsmouth Square shareholders outlining his objections to the Ramapo transaction. Alleging that the Ramapo shares had been illegally issued for future consideration, York proposed litigation to void those shares. He solicited the shareholders to contribute a portion of their upcoming corporate dividends to finance the litigation. In a subsequent letter the Committee explained that a successful lawsuit would return "control of our company" to the original shareholders, and that "under new management" the corporation's problems would disappear.

We must determine whether the Committee members "agree(d) to act together for the purpose of acquiring, holding, voting or disposing of" Portsmouth Square stock.

---

tion, including changes that the participants plan to made in the management, structure, or business operations of the corporation. It also must set forth any relationships and arrangements among the parties to the transaction or among those parties and third parties, including agreements with respect to voting of shares or proxies.

8. Every court of appeals but one that has been faced with the question has held that an issuer corporation has standing to seek injunctive relief under section 13(d). *Indiana National Corp v. Rich,* 712 F.2d 1180 (7th Cir.1983); *Dan River, Inc. v. Unitex, Ltd.,* 624 F.2d 1216, 1224 (4th Cir.1980), *cert. denied,* 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 827 (1981); *GAF Corporation v. Milstein,* 453 F.2d 709, 720 (2d Cir.1971); *cert. denied,* 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972). *See also Chromalloy American Corp. v. Sun Chemical Corp.,* 611 F.2d 240, 248 n. 16 (8th Cir.1979) (granting injunctive relief to the issuer corporation without discussing the standing issue); *General Aircraft Corp. v. Lampert,* 556 F.2d 90, 97 (1st Cir.1977) (same). *Contra Liberty National Insurance Holding Co. v. Charter Co.,* 734 F.2d 545, 555–59 (11th Cir. 1984); *Leff v. CIP Corp.,* 540 F.Supp. 857, 865 (S.D.Ohio 1982); *Gateway Industries v. Agency Rent A Car,* 495 F.Supp. 92 (N.D.Ill.1980) (disapproved by *Indiana Nat'l Corp. v. Rich* ). We are persuaded by this overwhelming weight of authority that Portsmouth Square may assert a Section 13(d) claim.

Portsmouth Square argues that the Committee seeks to "dispose of" the Ramapo shares, within the meaning of section 13(d), by means of the proposed litigation to cancel the shares. It urges us to interpret the Williams Act broadly "to require public disclosure by all persons involved in struggles for corporate control without regard to the techniques being used."[9] The corporation cites the correspondence between the Committee and the other shareholders as evidence that the Committee's ultimate goal is to assert control over the corporation and remove its present management. It seeks to enjoin the use of funds obtained from the shareholders, as well as further shareholder solicitations, until such time as the Committee publicly discloses its intentions in a Schedule 13(d).

Before reaching Portsmouth Square's substantive argument, we must briefly consider its argument that we approved its interpretation of section 13(d) on a prior appeal. This is the second time that the district court has rejected Portsmouth Square's case. Judge Schwarzer granted summary judgment for the Committee on May 2, 1980, over Portsmouth Square's protest that it had not had a sufficient opportunity to conduct discovery. Portsmouth Square appealed. On April 26, 1983, we reversed in an unpublished decision and remanded "with instructions to allow discovery on the issue of appellees' purpose in acting as the Shareholders Protective Committee...." *Portsmouth Square, Inc. v. Shareholders Protective Committee,* 707 F.2d 518, slip op. at 3 (9th Cir.1983).

■ The district court did not violate our mandate by dismissing the action once discovery had been completed. Portsmouth Square misreads our prior decision. The prior decision was not intended to address the merits of the plaintiff's claim. It was meant only to allow Portsmouth Square "a meaningful opportunity for discovery" before requiring its complaint to withstand the test of a summary judgment motion. *Id.* at 2. We specifically declined to interpret section 13(d) "on the slim record before us at this stage in this case." *Id.* at 5, n. 1. The decision made no attempt to define the statutory "purpose of acquiring, holding, or disposing of" securities, but merely noted that Portsmouth Square would state a claim *if* after further discovery it could prove that the Committee acted for such a purpose.

■ Now that Portsmouth Square has marshaled its evidence, we hold that it has not established a right to relief under section 13(d). In our view, Congress did not intend section 13(d) to apply to shareholders who attempt to raise funds for a lawsuit challenging the validity of existing corporate stock. We find support for our conclusion in the legislative history of the statute, in the interpretations of the Securities and Exchange Commission, and in the decisions of other courts.

Congress enacted section 13(d) in 1968, in response to a sharp increase in corporate takeover bids. *GAF Corporation v. Milstein,* 453 F.2d 709, 717 (2d Cir.1971), *cert. denied* 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972). Although section 14(a) of the Securities and Exchange Act required disclosure of information in connection with proxy contests, no similar disclosure requirement covered cash tender offers or similar methods of securing corporate control. *Id.* Consequently, Congress enacted section 13(d) to "correct the gap in our securities laws ... to provide for full disclosure in connection with cash tender offers and other techniques for accumulating large blocks of equity securities of publicly held companies." *Id.,* quoting H.R. Rep. No. 1711, 1968 U.S.Code Cong. and Ad.News 2814. Such disclosure allows in-

---

9. We hold Portsmouth Square to its counsel's concessions at oral argument that the section 13(d) claim is based solely on the litigation challenging the validity of the Ramapo shares. Portsmouth Square has not taken a consistent position on that issue. Its briefs focus exclusively on the proposed litigation. Late in his argument, however, counsel contradicted the briefs and his earlier concessions by suggesting that the Committee has pursued activities other than litigation in its effort to gain control of the corporation. He did not specify what those activities were, however, and he has not cited any evidence to illustrate them.

vestors to determine the value of the corporation's securities more accurately and to make more informed investment decisions. *Id.*

The courts and the SEC have recognized that shareholders can accumulate corporate shares without actually purchasing them. Rule 13d–5(b)(1) applies section 13(d) to groups of shareholders who have "accumulated" shares only in the sense that they have agreed to combine their existing shares in an concerted effort to influence the corporation. The SEC regulation codifies the holding of *GAF Corporation v. Milstein.* In *GAF Corporation,* the Second Circuit reasoned that section 13(d)

> was primarily concerned with disclosure of *potential changes* in control resulting from new aggregations of stockholdings and was not intended to be restricted to only individual stockholders who made future purchases and whose actions were, therefore, more apparent. (citation) It can hardly be questioned that a group holding sufficient shares can effect a takeover without purchasing a single additional share of stock.

453 F.2d at 718 (emphasis in original). Rule 13d–5(b)(1) makes clear that either an agreement respecting the voting of existing shares, or an agreement to act in concert to purchase additional shares, may create a block of shares that triggers section 13(d).

In the case at bar, Portsmouth Square alleges that the Committee members have agreed to pursue litigation to cancel the Ramapo shares as a means of regaining control over the corporation. Even if we assume that the allegation is true, the Committee members have not exercised or agreed to exercise their powers of ownership so as to create a new aggregation of stock. Their litigation, brought to determine the validity of shares owned by another shareholder, is fundamentally different from the corporate takeover techniques at

which section 13(d) is aimed.[10] It attempts to vindicate *existing* rights of which the shareholders allegedly have been deprived by improper or illegal corporate action. The Committee contends that the Ramapo shares were issued for future consideration, which allegedly is illegal under California law. If the Committee ultimately prevails on that claim, the voice of its members in the Portsmouth Square corporation will be the same as it would have been had the Ramapo shares not been issued improperly. Although the *result* of the suit may be a shift in corporate control or a change in corporate structure, the vindicated shareholders will not have effected a "takeover" in the same sense as shareholders who pool their voting power to elect a new board of directors.

If we were to construe section 13(d) to apply to litigation merely because the litigation could affect corporate control, we would create a potential weapon for those who oppose the litigation. Congress did not intend that section 13(d) would provide existing management with a means of discouraging legitimate shareholder activities. *See Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 58, 95 S.Ct. 2069, 2075, 45 L.Ed.2d 12 (1975). We find that policy especially compelling where shareholders challenge the lawfulness of corporate conduct which allegedly has deprived them of their rights as shareholders.

The SEC definition of "beneficial ownership" under section 13(d) supports our conclusion. Rule 13d–5(b)(1) provides that persons who "agree to act together for the purpose of acquiring, holding, voting, or disposing of" securities shall be deemed to have acquired "beneficial ownership," as of the date of their agreement, of all securities owned by each of them. A beneficial owner of a security is one who has either the power to vote the security, or the power to invest it or dispose of it. 17 C.F.R.

---

**10.** In *GAF Corporation v. Milstein,* 453 F.2d at 713–14, the plaintiff alleged that the defendant shareholders had filed derivative actions against the corporation in an attempt to depress the price of GAF stock and gain information for the alleged takeover conspiracy. Here, by contrast, the plaintiff does not allege that the Committee brought the Ramapo lawsuit as part of a larger scheme to acquire more shares of Portsmouth Square.

§ 240.13d–3. It follows that Rule 13d–5(b)(1) applies to shareholders who have agreed to combine their voting power or investment power in pursuit of common goals.

 Here the alleged "agreement to act together" invoked neither voting power nor investment power. The Committee members, as a group, do not seek to acquire additional shares in Portsmouth Square. They do not plan to "dispose of" their shares by transferring the shares and the accompanying voting rights to someone else. *Compare Wellman v. Dickinson,* 475 F.Supp. 783, 826–29 (S.D.N.Y.1979), *aff'd* 682 F.2d 355 (2d Cir.1982), *cert. denied* 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983) (group formed for the purpose of selling securities held subject to section 13(d), where the group members sought a buyer who would take control and restore them to management positions in the corporation). They have not agreed to vote their shares in any particular way. At most, they have agreed to act as a group to raise funds for litigation, and solicited corporate dividends from other shareholders to finance the litigation. But beneficial ownership does *not* include the right to receive dividends. Indeed, the SEC squarely rejected a proposed rule that would have defined "beneficial owner" as one with the right to receive or direct the receipt of dividends or sale proceeds. SEC Release No. 34–15348, 1978 Fed.Sec.L.Rep. (CCH) ¶ 81,762 (Nov. 22, 1978). We conclude that the Committee members cannot be deemed to have "acquired beneficial ownership" of one another's shares under Rule 13d–5(b)(1).

Finally, Portsmouth Square suggests that the Committee has violated the securities laws by filing a "false and misleading" Schedule 13(d), regardless of whether it was actually required to file one. Portsmouth Square provides no authority for this theory, and we reject it. The Committee filed a Schedule 13(d) only under protest, at the insistence of the corporation. It did not expose itself to liability by doing so, except to the extent that it had a section 13(d) filing obligation. We hold that it had no such obligation.

The district court's judgment is AFFIRMED.