**CALVARY HOLDINGS, INC., et al., Plaintiffs, Appellants,**

v.

**Burton CHANDLER, Defendant, Appellee.**

No. 91–1445.

United States Court of Appeals, First Circuit.

Heard Sept. 3, 1991.
Decided Oct. 30, 1991.

Daniel J. Kelly with whom Robert A. Trevisani and Gadsby & Hannah, Boston, Mass., were on brief for plaintiffs, appellants.

Edward P. Leibensperger with whom David Abelman, Lori J. Shapiro and Nutter, McClennen & Fish, Boston, Mass., were on brief for defendant, appellee.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

BOWNES, Senior Circuit Judge.

Plaintiff-appellants Calvary Holdings, Inc., Calvary Partners, Inc., and Calvary Partners, L.P. appeal from a finding of summary judgment against them.[1] They had sued defendant-appellee Burton Chandler ("Chandler") alleging failure to file a Schedule 13D as required under section 13(d) of the Securities and Exchange Act as a "beneficial owner" of more than five percent of the outstanding stock of Diceon Electronics, Inc. ("Diceon"). The central question in this action is whether a nominee who may vote only at the direction of third parties must file a Schedule 13D under the Securities and Exchange Act as a "beneficial owner." Holding that section 13(d) does not require that such individuals must file a disclosure form, we affirm the summary judgment ruling of the district court.

## I. Background

The undisputed facts are the following. On November 22, 1989, Chandler, a Massachusetts attorney, became the record owner of 12.9 percent of the outstanding shares of Diceon. The shares were transferred to him from the Arizona D.E. Service Corporation which had previously held the stock as nominee for Roland Matthews

---

1. Calvary Holdings, Inc. is a privately owned California corporation. Calvary Partners, L.P., a limited partnership, is the single stockholder of Calvary Holdings, Inc. Calvary Partners, Inc. is the general partner of Calvary Partners, L.P. For ease, the appellants will collectively be referred to as "Calvary."

("Matthews") and Peter S. Jonas ("Jonas"), two directors of Diceon. As part of the transaction Chandler and each respective director entered into a nominee agreement limiting the rights, powers and obligations of Chandler in regard to the shares.[2] At the time Chandler acquired the shares he did not file a Schedule 13D under the Securities and Exchange Act. 15 U.S.C. § 78m(d).

In the fall of 1990, Calvary made a tender offer and entered into a proxy fight in an effort to acquire control of Diceon. At that time Calvary discovered that Chandler had not filed a Schedule 13D. It instituted an action for preliminary injunction in the District Court for the District of Massachusetts. At that point Chandler filed a precautionary Schedule 13D disclaiming beneficial ownership. The district court denied a preliminary injunction and this court affirmed.

Nevertheless, Calvary continued with the suit, seeking an order requiring a complete Schedule 13D from Chandler. After deposing Chandler, Calvary moved to compel answers to questions regarding the purpose of the transactions between Chandler and Jonas and Matthews. Chandler had refused to answer these questions on the grounds of attorney-client privilege.

While the motion to compel was still pending, Chandler moved for summary judgment on the grounds that he was not a beneficial owner of the stock. In opposition, Calvary argued that it needed further discovery including the responses to the questions that were the subject of the motion to compel under Federal Rule of Civil Procedure 37(a). The district court dismissed the action, finding that "Chandler, as a matter of law, does not have the 'benefits of ownership.'" Calvary appeals the dismissal.

## II. Discussion

Calvary raises two issues on appeal: (1) whether the district court, as a matter of law, erred in finding that Chandler was not required to file a Schedule 13D because he is not a "beneficial owner" of Diceon stock; and (2) whether the district court prematurely granted defendant summary judgment, denying plaintiffs a continuance to investigate the purpose or purposes behind the nominee transactions.

### A. *Summary Judgment*

Calvary first claims that the district court erroneously granted summary judgment by ruling that individuals who have no actual voting power or ability to dispose of stock held in their name are not required to file a Schedule 13D. It contends that Chandler as a record owner of more than five percent of Diceon's outstanding stock was required under the Securities and Exchange Act to file a Schedule 13D disclosure form.

Our review of summary judgment is plenary. *Amsden v. Moran*, 904 F.2d 748, 752 (1st Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990). We, like the district court, must view the record in the light most favorable to the non-moving party, indulging all reasonable inferences in that party's favor. *Griggs–Ryan*, 904 F.2d at 115; *Amsden*, 904 F.2d at 752. Under Federal Rule of Civil Procedure 56(c) the moving party is entitled to summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."

██ Appellants cannot and do not contest that, in light of the uncontradicted evidence, Chandler is a nominee by virtue of the agreements with Jonas and Matthews. In deposition testimony, Chandler

**2.** The nominee agreements between Chandler and Jonas and Matthews respectively state in pertinent part:

2. (a) The nominee shall have no rights, powers or obligations with respect to the Nominee Shares other than as specifically provided in this Agreement. All rights and powers relating to the Nominee Shares shall be exercised by the Nominee only as nominee and only in accordance with instructions from the Stockholder as *beneficial owner* of the Nominee Shares....

stated that he was a nominee and that the nominee agreements signed on transfer of the stock represent the entire agreement between the parties.[3] According to the nominee agreements Chandler may only dispose of or vote the stock in accordance with the directions of Jonas and Matthews.

Calvary's argument is that all nominees, except those covered by a separate limited exception in the SEC regulations, must file a Schedule 13D even if their votes are controlled by third parties. Section 13(a)(1) of the Securities and Exchange Act states that:

> Any person who, after acquiring directly or indirectly the *beneficial ownership* of any equity security ... is directly or indirectly the beneficial owner of more than 5 per centum of such [stock] shall, within ten days after such acquisition, send to the issuer of security ... send to the exchange where the security is traded and file each with the Commission, a statement....

15 U.S.C. § 78m(a)(1) (emphasis added).

"Beneficial ownership" is defined by SEC regulations as:

> [A]ny person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has or shares:
>
> (1) Voting power which includes the power to vote, or to direct the voting of such security; and/or
>
> (2) Investment power which includes the power to dispose, or to direct the disposition of, such security.

17 C.F.R. § 240.13d–3(1)(a) (1991).

Calvary focuses on the language "power to vote or to direct the voting." Relying on Delaware law, Calvary argues that because only record owners are entitled to vote, nominees like Chandler have the "power to vote" and therefore are required to file a Schedule 13D. *See* Del.Code Ann. tit. 8, § 213 (1987). It contends that both those entitled to vote and those that may control

the record owner's vote are required to file a Schedule 13D as "beneficial owners" under 17 C.F.R. § 240.13d–3.

We are of the opinion, however, that neither Congress nor the SEC intended that nominees limited to purely ministerial tasks be required to file a Schedule 13D. In 1968 Congress amended the Securities and Exchange Act of 1934 to combat a perceived problem in the area of transfers of corporate control. Individuals were accumulating large blocks of stock in corporations in a short period of time and/or making cash tender offers without any public disclosure. H.R.Rep. No. 1711, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 2811, 2812–14 (hereinafter House Report); *see also General Aircraft Corp. v. Lampert,* 556 F.2d 90, 94 (1st Cir.1977). Other investors were unaware of these possible changes in corporate control. Such investors were therefore forced to invest blindly without the information necessary for rational decision-making. *See* Louis Loss & Joel Seligman, 4 *Securities Regulation* 2164 (1990).

The amendment, called the Williams Act, was intended to alleviate this problem by requiring those in the position to alter control of a company to disclose to the SEC and the corporation their ownership. House Report at 2814; *see also Wellman v. Dickinson,* 682 F.2d 355, 365 (2d Cir. 1982) ("Section 13(d) was designed to alert investors in securities markets to potential changes in corporate control and to provide them with an opportunity to evaluate the effect of these potential changes."), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983); *GAF Corp. v. Milstein,* 453 F.2d 709, 717 (2d Cir.1971), *cert. denied,* 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972); *Bath Indus., Inc. v. Blot,* 427 F.2d 97, 102 (7th Cir.1970); Loss & Seligman, *supra* at 2165–66 ("The legislative history thus shows that Congress was intent upon regulating takeover bidders, theretofore operating covertly, in or-

---

**3.** Chandler stated in an affidavit dated January 18th, 1991 that he has "no power to do anything with [Diceon] stock except as directed by Messrs. Matthews and Jonas, respectively, or their respective representatives. Under the agreements, I may not vote, convey, pledge, encumber, sell, invest or use the shares in any other fashion, except as directed, respectively."

der to protect the shareholders of target companies.").

Section 13(d) requires "disclosure of information by persons who have acquired a substantial interest, or increased their interest in the equity securities of a company by a substantial amount, within a relatively short period of time." House Report at 2818. Thus the Williams Act is aimed at those who seek control of shares in order to effectuate changes in a corporation. Rule 13d–3(1)(a) defining "beneficial ownership" recognizes this. The regulation focuses on the "power to vote;" the ability to "direct a vote;" and the "power to dispose" of stock. 17 C.F.R. § 240.13d–3(1)(a). Implicitly the regulation concentrates on those individuals who have "the ability to control or influence the voting or disposition of the securities." Interpretive Release Applicable to Insider Reporting and Trading, Exchange Act Release No. 34–18114, 46 Fed.Reg. 48147–01 (October 1, 1981).

The SEC in its interpretative releases and No–Action Letters illustrates this interpretation of rule 13d–3. The Commission, in an interpretative release explaining the rule, stated that:

> for purposes of [rule 13d–3], the mere possession of the legal right to vote securities under applicable state or other law ... may not be determinative of who is a beneficial owner of such securities inasmuch as another person or persons may have the power whether legal, economic, or otherwise to direct such voting.

Adoption Beneficial Ownership Disclosure Requirements, Exchange Act Release No. 13291, 11 SEC Dock. 1779, 1783 (February 24, 1977). Thus, the Commission focuses on who can actually vote the shares *not* who is the record owner of the stock. Further, the release suggests that if one person has possession of the legal right to vote while another has the actual power to vote, only the individual able to direct the voting must file a Schedule 13D. This interpretation directly contradicts appellants' contention that *both* the record owner and the person able to direct the vote must file a Schedule 13D.

Moreover, in No–Action letters the Commission has consistently exempted entities or individuals that had no actual voting power over the stock from the Schedule 13D filing requirement. It exempted from the filing requirements trustees of pension funds where the participants directed the trustees voting. *See* Rio Grande Industries, Inc., SEC No–Action Letter [1989–1990 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 79,318 (April 5, 1989). It also exempted clearinghouses from the filing requirements. *See* Depository Trust Co., SEC No–Action Letter [1979 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 82,192 (February 23, 1989). Finally, the SEC excused minority partners from the filing requirement where majority partners had all the power to make decisions regarding the voting of stock owned by the partnership. *See* Overseas Shipbuilding Group, Inc., SEC No–Action Letter [1977–1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 81,374 (September 30, 1977).

Calvary argues that because the SEC has explicitly excluded brokers who hold stocks in street name under rule 13d–3(d)(2), the SEC requires that all other nominees file a Schedule 13D.[4] This regulation, however, exempts brokers who have the power to vote without direction from the individual for whom they hold the stock. The regulation does not discuss those nominees that have no ability to vote without direction as in this case. It does not follow that because the SEC exempted a class of people that would be clearly otherwise covered by the regulations, namely stock brokers who may vote without direction, that the SEC intended to require other nominees who

---

**4.** 17 C.F.R. § 240.13d–3(d)(2) states that:

A member of a national securities exchange shall not be deemed to be a beneficial owner of securities held directly or indirectly by it on behalf of another person solely because such member is the record holder of such securities and ... *may direct the vote of such securities, without instructions,* on other than contested matters or matters that may affect substantially the rights or privileges of the holders of the securities to be voted....
(Emphasis added).

may not vote *without* direction to file a Schedule 13D.

Finally, the courts in defining section 13(d) of the Securities and Exchange Act look to who has the actual ability to vote. For example, in *Bath Industries, Inc.*, the Seventh Circuit found that it was clear that " 'one who has the right to determine how the stock is voted has a beneficial interest for the purposes of this Act.' " 427 F.2d at 112 (quoting *Bath Industries v. Blot*, 305 F.Supp. 526 (E.D.Wis.1969)); *see also GAF Corp.*, 453 F.2d at 716. The court opined that legal title is irrelevant for the purpose of the statute if someone else can guarantee a block of votes. *Bath Industries*, 427 F.2d at 112.

Thus we find that Section 13(d) of the Securities and Exchange Act does not apply to someone in Chandler's position. He owns the stock in name only. The appellants offered no proof that the nominee agreements were not the whole of the agreements between Chandler and Matthews and Jonas respectively. The agreements allowed Chandler to vote or dispose of the stock only with the permission of Matthews or Jonas. In no way could Chandler, although the record owner of the stock, effectuate any control over the management of Diceon. We hold as a matter of law that summary judgment was properly granted on this issue.

Calvary argues alternatively that Chandler must file a Schedule 13D because he is a member of a group as defined by rule 13d–5(b)(1).[5] It is a settled appellate rule in this circuit that issues not raised in the district court may not be raised for the first time on appeal. *Boston Celtics Ltd. Partnership v. Shaw*, 908 F.2d 1041, 1045 (1st Cir.1990); *Bettencourt v. Board of Registration in Medicine*, 904 F.2d 772, 780 (1st Cir.1990). Calvary did not argue in its motion opposing summary judgment that Chandler was a part of a group and thereby required to file a Schedule 13D. It only argued that under rule 13d–3 Chandler alone as a record owner of five percent of the outstanding stock had to file a Schedule 13D. Though in a general sense Calvary addressed the issue of whether Chandler had to file a Schedule 13D as a "beneficial owner" it did not argue specifically in its brief opposing summary judgment that Chandler was a member of a group as defined by rule 13d–5. Having not been raised in the court below we will not examine the issue here.[6]

Finally, Calvary asserts that by filing a precautionary Schedule 13D Chandler must file a complete Schedule 13D because he has waived any argument that he is not a beneficial owner under Section 13(d). Under rule 13d–4 anyone filing a Schedule 13D may expressly declare that the statement not be construed as an admission of beneficial ownership.[7] We can only inter-

5. 17 C.F.R. § 240.13d–5(b)(1) states in pertinent part: "When two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership...."

6. Regardless, we are of the opinion that Calvary's argument that Chandler is a member of a group and therefore required to file a Schedule 13D has little merit. According to 15 U.S.C. § 78m(d)(3) and 17 C.F.R. § 240.13d–5 a group consisting of two or more individuals who agree to act together for the purpose of acquiring, holding or disposing of stock must file a Schedule 13D. According to the legislative history, this section was intended to prevent individuals from evading the dictates of section 13d by dividing control over a block of stock so that no one person had control over five percent individually but as a group had agreed to act in

concert. House Report at 2818; *see also GAF Co.*, 453 F.2d at 716; *Bath Industries*, 427 F.2d at 109.

In this case, Chandler and Matthews and Jonas respectively did not divide meaningful control over the stock in order to evade section 13(d). Rather, Jonas and Matthews retained voting and investment power over the stock while Chandler only had record ownership. Chandler, therefore, is not a member of a group as defined in section 13(D) because he had not agreed to share control over a block of stock but only to serve as record owner for those who did have control.

7. 17 C.F.R. § 240.13d–4 states: "Any person may expressly declare in any statement filed that the filing of such statement shall not be construed as an admission that such person is, for the purposes of section 13(d) ... of the [Securities and Exchange] Act, the beneficial owner of any securities covered by the statement."

pret this rule as meaning that if one does file a Schedule 13D with the appropriate disclaimer that one may still claim not to be a beneficial owner under Section 13(d). Otherwise the regulation would serve no purpose whatsoever.[8]

Based on the statute, the SEC regulations and the law we hold that the district court properly directed a summary judgment for Chandler.

## B. *Denial of Continuance to Allow Further Discovery*

Calvary argues that under Federal Rule of Civil Procedure 56(f) it was entitled to a continuance before the district court acted on Chandler's summary judgment motion.[9] It contends that because there was a motion to compel under Federal Rule of Civil Procedure 37(a) pending at the time of the summary judgment motion it was an abuse of discretion for the trial court to deny a request for a continuance. Calvary argues that if it had been provided with the information covered by the motion to compel, it would have been better able to oppose the summary judgment motion.

■ "The grant or denial of a Rule 56(f) continuance always rests in the trial court's sound discretion." *Sheinkopf v. Stone,* 927 F.2d 1259, 1263 (1st Cir.1991) (citation omitted). In this case we see no abuse of discretion in denying the continuance. Rule 56(f) provides that a continuance is proper if the party opposing summary judgment needs more time in order to obtain facts essential to justify its opposition. *See Franco–De Jerez v. Burgos,* 876 F.2d 1038, 1043 (1st Cir.1989); *Snook v. Trust Co. of Georgia Bank, N.A.,* 859 F.2d 865, 870–71 (11th Cir.1988); *Parrish v. Board of Comm'rs,* 533 F.2d 942, 947–48 (5th Cir. 1976). A party must allege, however, that those facts to be obtained through dis-

covery are relevant to a genuine material issue in the litigation. *Sheinkopf,* 927 F.2d at 1263; *Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985, 988 (1st Cir.1988).

In this case Calvary seeks, according to its motion to compel, information "concerning the purpose or porposes [sic] behind [Chandler's] acquisition of 13 percent and instructions he may have received concerning the voting of such shares." Chandler, at his deposition, had refused to answer questions concerning these issues on the grounds of attorney-client privilege. Calvary contends that the answers to these questions are material to the issue of whether Chandler must file a Schedule 13D under the Securities and Exchange Act.

The facts sought, even if discoverable, are not material to this case. The reason why Chandler obtained thirteen percent of Diceon is irrelevant to the main issue of this action; whether Chandler has the attributes of ownership that would make him a "beneficial owner" under section 13(d). As discussed above, that inquiry centers around Chandler's ability to vote the stock or to dispose of the shares. As to his power to vote or dispose of the stock, Chandler has stated in both his deposition and his affidavit that the nominee agreements contain all the power he has over the stock.

The motion to compel was not directed at voting power. Rather it was aimed at discovering why Chandler and Jonas and Matthews entered into these stock agreements and the particular instructions Chandler had received from Jonas and Matthews regarding their stock. Though interesting questions in their own right, they are not material to the issue at hand.

We find that the district court judge did not abuse its discretion in denying Calvary's motion for a continuance.

---

**8.** Calvary suggests that Chandler's Schedule 13D is incomplete. Because we find that Chandler did not have to file a Schedule 13D at all we do not have to reach that issue.

**9.** Fed.R.Civ.P. 56(f) states:
Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts *essen-*

*tial to justify the party's opposition,* the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
(Emphasis added).

### C. *Conclusion*

To summarize: we find as a matter of law that the district court properly granted summary judgment for Chandler on the issue of whether he had to file a Schedule 13D under section 13(d) of the Securities and Exchange Act. Further, we find that the trial court did not abuse its discretion in denying appellant's Rule 56(f) motion for a continuance.

*Affirmed.*