958 F.2d 361
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
George R. GUSCOTT, ET AL., Plaintiffs, Appellants,
v.
CITY OF BOSTON, Defendant, Appellee.
 No. 91-1887.
 United States Court of Appeals,
First Circuit.
 March 25, 1992
 
 Laurie A. Kelly with whom Henry F. Owens, III, and Owens & Associates were on brief for appellants.
 John R. Devereaux with whom Steven I. Venezia, Assistant Corporation Counsel, City of Boston Law Department, were on brief for appellee.
 Before Torruella, Circuit Judge, Campbell and Bownes, Senior Circuit Judges.
 CAMPBELL, Senior Circuit Judge.
 
 
 1
 George Guscott, Cecil Guscott and Kenneth Guscott a/k/a Long Bay Management Company (Long Bay) appeal from an order entered on July 17, 1991, by the United States District Court for the District of Massachusetts dismissing a complaint for breach of contract against the City of Boston. Finding no reversible error, we affirm.
 
 I.
 
 2
 On August 29, 1982, Long Bay submitted a bid in response to a public advertisement by the United States Department of Housing and Urban Development (HUD) soliciting bids on a distressed housing development known as Brunswick Gardens, located in Boston, Massachusetts. Although only $6,000, Long Bay's bid was the highest bid submitted. Brunswick Gardens was advertised by HUD as consisting of five uncompleted structures on seven parcels making up approximately six acres of land. However, at the time, HUD owned only five of the seven parcels. The remaining two, comprising five of the six acres, had been acquired by the City of Boston (the City) by tax forfeiture, and title remained, as it apparently still does, with the City.
 
 
 3
 Prior to the solicitation of the bids, HUD and the City were engaged in negotiations between themselves aimed at assembling ("reconstituting") all parcels for public sale by HUD to some third party. For its part, the City sought reimbursement for back taxes outstanding on the properties; various resolutions of this problem were discussed. No formal agreement between HUD and the City was ever drawn; however, a HUD memo dated September 27, 1982, after the bidding, reported that the City had expressed its willingness to accept $7,565.84, or $1,565.84 more than Long Bay's bid of $6,000, as a minimum tax payment. See below. Long Bay, in fact, turned over to HUD a check for this amount. There is no evidence, however, that after receiving the sum, HUD turned it over to the City, or that the City itself ever declared itself satisfied and willing to deed the two parcels to HUD or any purchaser from HUD.
 
 
 4
 Several mystifying years then elapsed, during which, insofar as the record shows, both HUD and the City seem to have forgotten about the matter altogether. Finally, in 1988, Long Bay sued both HUD and the City in the Massachusetts Superior Court alleging breach of contract and seeking specific performance. Long Bay asked the court to order the City to immediately convey the City's two parcels to HUD and to order HUD, in turn, to convey them to Long Bay. HUD removed the action to the United States District Court pursuant to 28 U.S.C. §§ 1441-1442.
 
 
 5
 In the district court, Long Bay filed an amended complaint seeking the same remedy. Alternatively, Long Bay alleged that it was the intended third party beneficiary of a
 
 
 6
 purported contract between HUD and the City which the two parties had failed to carry out.
 
 
 7
 The City conceded that it had made a tentative agreement to transfer the parcels but asserted the agreement remained subject to unperformed conditions relative to payment and abatement of outstanding taxes. According to the City, it was uncontested that it was never paid the agreed upon back taxes. The City also asserted that the state's approval to abate the balance of taxes on the properties was never obtained.
 
 
 8
 A jury was finally impanelled on June 24, 1991. On that day, the City submitted a motion to dismiss or in the alternative for summary judgment. The district judge acknowledged that the motion was both sudden and late, but allowed it to be argued two days later in conjunction with proceedings at a pretrial conference held pursuant to Fed. R. Civ. P. 16.
 
 
 9
 On July 17, 1991, the district court ruled that Long Bay could not obtain specific performance against HUD. Jurisdiction to sue HUD is restricted to the Tucker Act, 28 U.S.C. § 1491(a)(1) and 1346(a)(2), which makes no provision for specific relief and, moreover, requires that damages relief be obtained in the United States Claims Court. On that same day, the district court upon motion of the United States and with the approval of Long Bay, ordered transfer of the action against HUD to the Claims Court pursuant to 28 U.S.C. § 163. At the same time, the district court allowed the City's motion for summary judgment against Long Bay and dismissed the complaint against the City.
 
 
 10
 Long Bay appeals from the district court's dismissal of the complaint against the City, arguing that summary judgment in favor of the City of Boston was improper because there remained genuine issues of material fact regarding plaintiffs' claim for specific relief against the City under the alleged contract between the City and HUD relative to the City's two parcels. Our review of the district court's grant of summary judgment is plenary. Frazier v. Bailey, No. 91-1477, slip op. at 2 (1st Cir. Feb. 24, 1992); Calvary Holdings, Inc. v. Chandler, 948 F.2d 59, 61 (1st Cir. 1991).
 
 II.
 
 11
 Long Bay's principal theory for recovery against the City is that it was the third party beneficiary of a contract allegedly made between the City and HUD, under which the City had agreed to transfer the two parcels to HUD or its designated purchaser. It is uncontested that Long Bay was the high bidder, and it now contends that it should be able to enforce HUD's contract with the City directly against the latter, securing a conveyance that bypasses HUD and thus renders immaterial HUD's immunity and disappearance from the case.
 
 
 12
 Third party beneficiary theory holds that when one person enters into a valid contract with another to do some act for the benefit of a third party, that third party [who would enjoy the benefit of the act] may bring a suit for the breach of that contract.[1] Long Bay cites § 309(3) of the Restatement (Second) of Contracts which provides that ... "the right of any beneficiary against the promisor is not subject to the promisor's claims or defenses against the promisee or to the promisee's claims or defenses against the beneficiary." Long Bay's reading of § 309 of the Restatement of Contracts is, however, incomplete. Sections 309(1) and (2) constitute exceptions to the broad sweep of § 309(3). These provisions read:
 
 
 13
 § 309(1) A promise creates no duty to a beneficiary unless a contract is formed between the promisor and the promisee; and if the contract is voidable or unenforceable at the time of its formation the right of the beneficiary is subject to the infirmity.
 
 
 14
 § 309(2) If the contract ceases to be binding in whole or in part because of impracticability, public policy, non-occurrence of a condition, or present or prospective failure of performance, the right of any beneficiary is to that extent discharged or modified. (emphasis added)
 
 
 15
 According to the City, even assuming a valid third party contract exists on this record (a matter by no means clear), any duty the City may have assumed to convey the two parcels was conditioned upon the payment to it of certain amounts of back taxes as well as the securing of the state's approval of the abatement of other taxes. Although Long Bay paid an amount to HUD which was supposed to be tendered by HUD to the City in satisfaction of the taxes, HUD never turned this amount over to the City. Nor was the state's approval obtained for abatement of the remaining taxes outstanding on the development properties. Thus, the City argues, under the terms of § 309(2), any possible rights Long Bay had as third party beneficiary to enforce performance by the City is precluded. Long Bay's right to enforce the City's performance under the assumed contract can be no better than HUD's right to do so. Since HUD neither tendered the amount for taxes nor secured approval of the required tax abatement, it was not entitled to conveyance of the City's parcels and neither was Long Bay. Furthermore, as the district court ruled, Long Bay could not compel HUD to perform the above conditions as the Tucker Act allows no such relief against a sovereign agency of the United States.
 
 
 16
 We are compelled to agree with the City. We need not decide whether or not HUD and the City entered into a binding agreement. If there was an agreement, however, HUD's September 27, 1982, memorandum made shortly after Long Bay's winning bid indicates the following terms:
 
 
 17
 We [i.e. HUD] had negotiated a tax settlement with the City of Boston which we believed reduced the tax claimed by the City from $261,000.00 to one-half of the highest bid received by our office. Upon notification to the City that the highest bid was $6,000.00, we were informed that the minimum tax payment that the City would accept is $8,974.80. We have previously paid $1,408.96, leaving a remaining tax of $7,565.84.
 
 
 18
 The purchaser of the parcel, Long Bay Management Company, is willing to pay the entire amount of $7, 565.84 or $1,565.84 more than its bid in order to proceed with the purchase.
 
 
 19
 In order to consummate this sale this fiscal year, we recommend that we accept Long Bay Management's payment of $7,565.84 and remit the entire amount to the City of Boston for the payment of the tax ...
 
 
 20
 There is evidence that Long Bay had, in fact, handed HUD a cashier's check for $7,565.84. There is absolutely no evidence, however, that HUD ever paid that sum over to the City in settlement of the tax.[2]
 
 
 21
 Thus even assuming a contract between HUD and the City under which the City promised to convey to HUD the two parcels necessary to reconstitute Brunswick Gardens, plaintiffs have failed to demonstrate that HUD met the contract condition relative to payment to the City of "minimum" back taxes. Since in the circumstances shown HUD was not entitled to insist upon the conveyance to it of the City's parcels, Long Bay as a third party beneficiary clearly lacked any right to specifically enforce the contract for its own benefit.
 
 
 22
 Upon review of the record, in the light most favorable to Long Bay, we conclude that summary judgment was appropriate.
 
 III.
 
 23
 Long Bay further argues that the district court erred prejudicially in allowing the City to argue its late-filed motion for summary judgment on only two days' notice. Long Bay points out that Fed. R. Civ. P. 56(c) mandates that a motion for summary judgment shall be served at least ten days before the time fixed for hearing. According to Long Bay, the ten day requirement differs from the usual five day notice required for most motions because of the more serious nature of the summary judgment motion and the greater problems that the nonmoving party faces in preparing to defend against it. Long Bay maintains that noncompliance with the rule deprived it of enough time to prepare.
 
 
 24
 One short answer to Long Bay's assertion is that Long Bay did not preserve a clear objection in the district court to the court's noncompliance with Rule 56(c).[3] More basically, however, the plaintiffs have failed to demonstrate prejudice. Failure to provide ten days notice is subject to the harmless error rule. Tyler v. Harper, 744 F.2d 653 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985); Hoopes v. Equifax, Inc., 611 F.2d 134, 135-136 (6th Cir. 1979). See Boston Celtics Ltd. Partnership v. Shaw, 908 F.2d 1041, 1051 (1st Cir. 1990).
 
 
 25
 Long Bay had had three years since bringing suit to proceed with discovery. The court examined the available evidence and stated that it accepted every factual representation, including those of Long Bay's counsel, in plaintiffs' favor "in other words, the development company has the best record they can have." Plaintiffs do not contend that the City's and HUD's documents in the record, upon which the court and parties relied, were less than all the evidence available bearing on the existence or nonexistence, and the terms, of a contract between the City and HUD. In the circumstances, we can find no prejudice. As the only issue was whether, as a matter of law, on all the facts known to the parties taken in the light most favorable to plaintiffs, Long Bay had a basis to recover from the City, the district court did not commit reversible error in granting summary judgment in favor of the City.
 
 
 26
 Affirmed. Costs to appellee.
 
 
 
 [1]
 In Rae v. Air-Speed, Inc., 435 N.E.2d 628, 632, 633 (Mass. 1982), the Supreme Judicial Court of Massachusetts adopted the third-party beneficiary rule set forth in § 302 of the Restatement (Second) of Contracts. In doing so, the SJC recognize[d] ... the principle of law that, 'when one person, for valuable consideration, engages with another, by simple contract, to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain an action for the breach of such engagement'. (citations omitted) Id. at 633
 
 
 [2]
 There is likewise no evidence of the securing of the state's approval to abate the balance of taxes, although we are unclear where it is recorded that HUD agreed to secure such approval as a precondition to conveyance
 
 
 [3]
 Counsel for Long Bay did express surprise and consternation initially but it is questionable whether an objection was preserved