652 F.2d 310
 Fed. Sec. L. Rep. P 98,019
E. H. I. OF FLORIDA, INC. d/b/a Horizon Hospital, Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA, Hospital Affiliates
International, a wholly-owned subsidiary of Insurance
Company of North America, H.A.I. of Florida, Inc., a
wholly-owned subsidiary of Hospital Affiliates
International, Richard Shapack, Esquire, individually and as
Trustee for Serial Gross Revenue Sinking Fund Bonds, Series
I and II, of Horizon Hospital, Inc., John Foltz, Esquire,
individually and as Trustee for Serial Gross Revenue Sinking
Fund Bonds, Series I and II, of Horizon Hospital, Inc., C.
Edward Dobbs, Esquire, and the firm of Kutak, Rock & Huie, Appellees.
 No. 80-2545.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 23, 1981.
Decided May 26, 1981.
 
 Paul R. Rosen (argued), Russell D. Henkin (argued), Spector, Cohen, Gadon & Rosen, Philadelphia, Pa., for appellant.
 Raymond W. Midgett, Jr. (argued), Sharon R. Klein, Dechert, Price & Rhoads, Philadelphia, Pa., John I. Van Voris, Shackleford, Farrior, Stallings & Evans, P. A., Tampa, Fla., for appellees Ins. Co. of North America, Hospital Affiliates Intern., Inc., H.A.I. of Florida, Inc.
 John F. Stoviak (argued), Robert N. DeLuca, Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., for appellees Richard Shapack, John R. Foltz, C. Edward Dobbs, Kutak, Rock & Huie.
 Before ADAMS, HUNTER and WEIS, Circuit Judges.
 OPINION OF THE COURT
 HUNTER, Circuit Judge:
 
 
 1
 This case centers on H.A.I. of Florida's offer to purchase all the real and personal property of Horizon Hospital, Inc. Appellant, E.H.I. of Florida, as present management of the hospital facility, requests a preliminary injunction to prohibit the sale. E.H.I. contends, in essence, that since the property at issue serves as collateral for long-term bonds issued by Horizon, the offer to purchase the assets is tantamount to a tender offer and subject to the regulations of the federal securities laws. The district court denied relief and we affirm. The federal securities laws are not at issue in this case; H.A.I.'s offer involves simply the acquisition of property that also acts as collateral supporting the Horizon sinking fund bonds. No security was ever tendered nor was there ever an invitation to tender any security. Such a purchase does not engage the disclosure or anti-fraud provisions of the federal securities laws. Therefore we affirm the district court's denial of the preliminary injunction.
 
 FACTS
 
 2
 In 1973 Horizon Hospital, Inc., a non-profit corporation, undertook to construct a psychiatric hospital in Clearwater, Florida. To help finance the cost of the facility, the corporation issued long-term sinking fund bonds which earned interest at a rate of 9% and 9 1/2% per annum. These bonds were secured by a first mortgage lien on the real property of the hospital as well as first lien on hospital's gross revenues. In February 1976, when Horizon Hospital, Inc. failed to make a quarterly interest payment, the bonds went into default. No interest payments have been made since June 1, 1979 and, although scheduled to begin in 1976, no sinking fund payments have been paid to date.
 
 
 3
 In March of 1980, appellant, E.H.I., and the Board of Trustees of Horizon Hospital, Inc., entered into an agreement whereby E.H.I. leased the Clearwater facility and undertook to manage all the tangible and intangible assets of the hospital for ten years. E.H.I. also secured an option to purchase the assets of the hospital at any time during the lease.[1]
 
 
 4
 On May 23, 1980, the Board of Trustees of Horizon Hospital, Inc., filed a petition for bankruptcy under Chapter VII of the Bankruptcy Code. 11 U.S.C. §§ 701-728 (Supp. III 1979). One week later the trustees for the Horizon Hospital bondholders converted this proceeding to one for reorganization under Chapter XI. 11 U.S.C. §§ 1101-1174 (Supp. III 1979).[2]
 
 
 5
 In August of 1980, the trustees for the holders of the Horizon Hospital sinking fund bonds entered into an asset purchase agreement with H.A.I. This agreement provided for, among other things, the sale of all the real and personal property of Horizon Hospital, Inc. to H.A.I. Because this property served as part of the collateral for the bonds, the asset sale was conditioned upon the approval of the transaction by persons holding a majority, in principal amount, of Horizon Hospital sinking fund bonds. The bondholder trustees requested the provision requiring bondholder approval; neither the indenture nor the bonds themselves gave the bondholders the right to vote on the disposition of the collateral underlying their bonds.
 
 
 6
 On September 10, 1980, pursuant to the H.A.I. asset purchase agreement, the bondholder trustees sent a letter soliciting the bondholders' approval of the sale. The letter asked only for approval of the sale; the bondholders were not asked to surrender their bonds, nor did the solicitation claim that the sale would satisfy the bondholders' claims against Horizon Hospital, Inc. The bondholders approved the asset sale.
 
 
 7
 The appellant, E.H.I., had no knowledge of the asset purchase agreement until the solicitation of the bondholders commenced. Upon learning of the plan, E.H.I. filed suit in district court claiming that H.A.I.'s letter to the bondholders was false and misleading and failed to contain information required by the disclosure provisions of federal securities laws. E.H.I. requested a temporary restraining order and preliminary injunction to enjoin both the solicitation and any activities contemplated in the bondholder trustees' letter. A temporary restraining order was issued by the district court ex parte and the case held over for full hearing. After the hearing, the district court denied the request for a preliminary injunction and dissolved the temporary restraining order. E.H.I. appeals.
 
 DISCUSSION
 
 8
 E.H.I. claims that the bondholder trustee's letter of September 10 violated section 14(a) of the Securities Exchange Act of 1934 and sections 14(d) and (e) of the Williams Act. 15 U.S.C. § 78n(a), (d) & (e) (1976). It seeks a preliminary injunction enjoining the bondholder trustees' solicitation or any activities contemplated by the solicitation letter of September 10.
 
 
 9
 In deciding whether to issue a preliminary injunction, a court must balance the conflicting interests of both parties, and when relevant, the public. As this court stated in Continental Group, Inc. v. Amoco Chemical Corp., 614 F.2d 351, 356-57 (3d Cir. 1980):
 
 
 10
 To support a preliminary injunction, the moving party must demonstrate that irreparable injury will occur if relief is not granted to maintain the status quo until a final adjudication on the merits can be made and that there is a reasonable probability of success on the merits. In addition, the court must weigh the possibility of harm to the non-moving party as well as to any other interested persons and when relevant, harm to the public.
 
 
 11
 Id. (footnotes omitted) See also Fitzgerald v. Mountain Laurel Racing, Inc., 607 F.2d 589, 600-01 (3d Cir. 1979), cert. denied, 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980).
 
 
 12
 The district court considered these factors and denied relief, ruling that E.H.I. failed to show either that irreparable harm existed or that they had a reasonable probability of success on the merits. As an appellate court our review of this decision is limited and the burden on the party seeking reversal is great. Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980). "Unless the trial court abuses its discretion, commits an obvious error in applying the law, or makes a serious mistake in considering the proof, the appellate court must take the judgment of the trial as presumptively correct." A.O. Smith Corporation v. FTC, 530 F.2d 515, 525 (3d Cir. 1976). Because appellant has failed to demonstrate that the federal securities laws apply to this situation there is little probability of success on the merits and hence we affirm the district court's denial of a preliminary injunction.
 
 
 13
 Reasonable Probability of Success on the Merits
 
 1. The Section 14(a) & (d) claims
 
 14
 E.H.I. contends, initially, that section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a) (1976), and section 14(d) of the Williams Act, 15 U.S.C. § 78n(d) (1976), apply to the bondholder trustee's letter of September 10. These provisions would require the filing of a registration statement and the disclosure of material information about the H.A.I. offer. Section 14(a) requires the solicitation of any proxy with respect to any security registered pursuant to section 12 of the Act, to be performed in accordance with the Securities and Exchange Commission's rules and regulations.[3] Section 14(d) makes unlawful a tender offer for any class of equity security registered pursuant to section 12, unless a disclosure statement is filed with the SEC.[4]
 
 
 15
 As the plain language of these statutes indicate, for either of these provisions to apply to the bondholder trustee's letter, the Horizon Hospital sinking fund bonds must be a "security registered pursuant to section 12 of the (Exchange) Act." 15 U.S.C. § 78n(a) & (d) (1976). Because the Horizon Hospital, Inc. bonds are not listed or traded on any national stock exchange, the registration requirements of section 12(g) apply. 15 U.S.C. § 78l (g)(1) & (2)(A) (1976). But the section 12 registration requirements for unlisted securities are limited to transactions involving "equity securities." 15 U.S.C. § 78l (g)(1)(A) & (B) (1976). Therefore, as a threshold matter, we must determine whether Horizon Hospital sinking fund bonds constitute equity securities. If so, the bonds must be registered under section 12(g) and the requirements of sections 14(a) and (d) engage. If the bonds are not equity securities, registration under section 12 is not required and section 14(a) and (d) do not apply. Because the Horizon Hospital sinking fund bonds are not section 12(g) equity securities we hold the requirements of sections 14(a) and (d) are inapplicable.
 
 
 16
 Section 3(a)(11) of the Securities Exchange Act of 1934 defines an equity security as:
 
 
 17
 any stock or similar security; or any security convertible, with or without consideration, into such a security, or carrying any warrant or right to subscribe to or purchase such a security; or any such warrant or right; or any other security which the Commission shall deem to be of similar nature and consider necessary or appropriate, by such rules and regulations as it may prescribe in the public interest or for the protection of investors, to treat as an equity security.
 
 
 18
 15 U.S.C. § 78c(a)(11) (1976).
 
 
 19
 The Securities and Exchange Commission has extended the definition of equity security to include:
 
 
 20
 any stock or similar security, certificate of interest or participation in any profit sharing agreement, preorganization certificate or subscription, transferable share, voting trust certificate or certificate of deposit for an equity security, limited partnership interest, interest in a joint venture, or certificate of interest in a business trust; or any security convertible, with or without consideration into such a security, or carrying any warrant or right to subscribe to or purchase such a security; or any such warrant or right; or any put, call, straddle, or other option or privilege of buying such a security from or selling such a security to another without being bound to do so.
 
 
 21
 17 C.F.R. § 240.3a 11-1 (1980).
 
 
 22
 An examination of the legislative history behind the Exchange Act's definition of equity security reveals that long-term, fixed interest rate bonds were clearly not intended to be equity securities. The Senate Hearings on the definition of equity security indicate that the term was intended to encompass solely stocks or similar securities that were prone to speculative trading. Stock Exchange Practices, Hearings on S.Res. 84, 56, and 97 Before the Senate Banking and Currency Committee, 72d Cong., 2d Sess., 73 Cong., 1st Sess. 7541-43 (1934). Traditionally, the SEC has recognized that Congress intended to limit the definition of equity securities to speculative stocks and to exclude long-term bonds. See National Rural Utilities Cooperative Finance Corporation, (1971-1972 Transfer Binder) Fed.Sec.L.Rep. (CCH) P 78,707 (SEC holds that long-term (fifty year) fixed interest sinking fund bonds are not equity securities and do not require registration under section 12(g)(1) of the Exchange Act); Cf. Amour & Company, (1970-1971 Transfer Binder) Fed.Sec.L.Rep. (CCH) P 78,025 (debentures which are convertible into speculative stock upon demand retain their status as equity securities).
 
 
 23
 The Horizon Hospital sinking fund bonds are long-term debt; they cannot be classified as equity securities. In Henry Heide Incorporated, (1972-1973 Transfer Binder) Fed.Sec.L.Rep. (CCH) P 78,838, the SEC was presented with a similar situation and held that long-term (fifteen year) debentures at a fixed amount of annual interest were not equity securities as the term is used in section 12(g). In Henry Heide the corporation planned to invite tenders of company's fifteen year debentures at 90% of their principal amount. Before commencing the offer the company received a no-action letter from the SEC which stated that the long-term debentures were not equity securities nor were they convertible into equity securities. Therefore the registration requirements of section 12(g) were not applicable and the proscriptions of sections 14(a) and (d) were held not to apply. Id. at 81,837.
 
 
 24
 Appellant, E.H.I. argues that since the bonds are secured by a mortgage on the tangible assets of the hospital they are similar to conventional stock and should be treated as equity securities. Hence the registration requirements of section 14(d) should apply. We disagree; the bonds' status as debt instruments is not altered simply because part of their collateral is a lien on all the tangible property of the hospital. The Horizon bondholders are exposed to minimal risks and receive a fixed rate of return. As the ninth circuit stated in United States v. Evans, "Stock is an equity; it represents an ownership interest. It is to be distinguished from obligations such as notes or bonds which are not equities and represent no ownership interest." 375 F.2d 730, 731 (9th Cir. 1967). The Horizon bonds are clearly debt. The bondholders are entitled only to a fixed rate of interest; they do not share in the profits or losses of the corporation. Therefore, the SEC's opinion in Henry Heide controls and neither proxy regulations of section 14(a) nor the disclosure rules of section 14(d) apply to this situation.
 
 2. The Section 14(e) claim
 
 25
 E.H.I. also claims that the bondholder trustees' letter to the holders of Horizon Hospital bonds was false and misleading in several respects and therefore violated the anti-fraud provisions contained in section 14(e) of the Williams Act. 15 U.S.C. § 78n(e) (1976). Unlike the proxy regulations of section 14(a) and the disclosure requirements of 14(d), the anti-fraud proscriptions contained in section 14(e) apply to any class of security. This section prohibits any untrue statement of a material fact or an omission of a material fact when it is made "in connection with any tender offer or request or invitation for tenders or any solicitation of security holders in opposition to or in favor of any such offer, request or invitation." 15 U.S.C. § 78n(e) (1976).[5]
 
 
 26
 Initially, before considering whether the contents of the September 10 letter violated section 14(e), we must determine whether the letter constituted a tender offer. Because the letter involved only the approval of a sale of assets and since the bondholders were never asked to tender the actual bonds, we agree with the district court that the letter did not constitute a tender offer and hold that section 14(e) is not applicable to this situation.
 
 
 27
 Although neither Congress nor the SEC has yet to provide a firm definition of the term, a tender offer is generally defined as a public invitation to a corporation's shareholders to purchase their stock for a specified consideration. See Kroeze v. Chloride Group Ltd., 572 F.2d 1099, 1104-05 (5th Cir. 1978); Smallwood v. Pearl Brewing Company, 489 F.2d 579, 597 n.22 (5th Cir. 1973), cert. denied, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974); E. Aranow & H. Einhorn, Tender Offers for Corporate Control 60 (1973); Note, The Developing Meaning of "Tender Offer" Under the Securities Act of 1934, 86 Harv.L.Rev. 1250, 1251-60 (1973).
 
 
 28
 We are not without some instruction however. The SEC has addressed the question of what constitutes a tender offer by promulgating a tentative definition of the term in proposed Rule 14(d)-1(b)(1):
 
 
 29
 The term "tender offer" includes a "request or invitation for tenders" and means one or more offers to purchase or solicitations of offers to sell securities of a single class, whether or not all or any portion of the securities sought are purchased which
 
 
 30
 (i) during any 45-day period are directed to more than 10 persons and seek the acquisition of more than 5% of the class of securities, except that offers by a broker (and its customer) or by a dealer made on a national securities exchange at the then current market or made in the over-the-counter market at the then current market shall be excluded if in connection with such offers neither the person making the offers nor such broker or dealer solicits or arranges for the solicitation of any order to sell such securities and such broker or dealer performs only the customary functions of a broker or dealer and receives no more than the broker's usual and customary commission or the dealer's usual and customary mark-up; or
 
 
 31
 (ii) are not otherwise a tender offer under paragraph (b)(1)(i) of this section, but which (A) are disseminated in a widespread manner, (B) provide for a price which represents a premium of the greater of 5% of or $2 above the current market price and (C) do not provide for a meaningful opportunity to negotiate the price and terms.
 
 
 32
 44 Fed.Reg. 3049, 3051-52 (1979). In commenting on the proposed definition, the SEC emphasized that activity can be classified as a tender offer if it meets either the requirements of 14(d)-1(b)(1)(i) or (ii). But a necessary condition of both sections is that the tender offer involve "one or more offers to purchase or solicitations of offers to sell securities of a single class." (emphasis added) Quite simply, no such offer, or invitation to offer, was contained in the bondholder trustees' letter of September 10. The bondholders were requested only to approve or disapprove the asset sale to H.A.I. There was never any offer to tender the bonds themselves, only a request to approve the sale of some of the collateral which supported them. Under even the most expanded common law definitions, such a request does not constitute a tender offer. See Gilbert v. Bagley, 492 F.Supp. 714, (1980 Transfer Binder) Fed.Sec.Law Rep. P 97,553 at 97,907-09 (M.D.N.C.1980) (tender offer is any method of acquisition with the capability of exerting pressure upon shareholders to make an ill informed decision); Smallwood v. Pearl Brewing Company, 489 F.2d 579, 598 (5th Cir.), cert. denied, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974) (repurchase of shares pursuant to a sellout provision of a merger agreement unopposed by management held to be a tender offer); Wellman v. Dickinson, 475 F.Supp. 783, 823-25 (S.D.N.Y.1979) (court develops an eight part definition of tender offer which requires offer to purchase stock).
 
 
 33
 We also reject appellant E.H.I.'s argument that H.A.I.'s asset sale transaction was tantamount to a purchase of all the equity of a corporation and hence should be treated as a purchase of stock, even though the bonds themselves were never tendered. The purchase of part of the collateral which supports a bond is in no way tantamount to the acquisition of the bond itself. Other collateral, specifically, choses in action against the original promoters of Horizon, support the bonds. In addition the bondholders still remain creditors of Horizon Incorporated. The trustee's letter requested only the approval of an agreement. This is not, even under the most liberal definitions a tender offer, sufficient to engage the provisions of 14(e).
 
 
 34
 For the reasons stated above, we find that E.H.I. failed to demonstrate a reasonable likelihood of success on the merits. We therefore hold that the district court's denial of their motion for a preliminary injunction will be affirmed.
 
 
 
 [1]
 The option agreement gave E.H.I. the right to purchase the assets of the hospital at any time during the initial terms of the lease for $14,454,797, reduced by any rental payments made under the lease. Option to Purchase, Plaintiff's Exhibit 5 at P 3(a)
 
 
 [2]
 There are three matters pending before the bankruptcy court involving E.H.I. Horizon Hospital, Inc. has sued E.H.I. to recover $150,000 transferred by it to E.H.I. at the start of the lease term to pay then existing creditors. E.H.I. has applied to the bankruptcy court for funds to meet E.H.I.'s payroll. E.H.I. also claims the assets of two bank accounts that were frozen by the bankruptcy court
 
 
 [3]
 The full text of section 14(a) provides:
 It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempt security) registered pursuant to section 78l of this title.
 15 U.S.C.A. § 78n(a) (1976).
 
 
 [4]
 Section 14(d) provides in pertinent part:
 (d)(1) It shall be unlawful for any person, directly or indirectly, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, to make a tender offer for, or a request or invitation for tenders of, any class of any equity security which is registered pursuant to section 78l of this title ... if, after consummation thereof, such person would, directly or indirectly, be the beneficial owner of more than 5 per centum of such class, unless at the time copies of the offer or request or invitation are first published or sent or given to security holders such person has filed with the Commission a statement containing such of the information specified in section 78m(d) of this title, and such additional information as the Commission may by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors. All requests or invitations for tenders or advertisements making a tender offer or requesting or inviting tenders of such a security shall be filed as a part of such statement and shall contain such of the information contained in such statement as the Commission may by rules and regulations prescribe. Copies of any additional material soliciting or requesting such tender offers subsequent to the initial solicitation or request shall contain such information as the Commission may by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors, and shall be filed with the Commission not later than the time copies of such material are first published or sent or given to security holders. Copies of all statements, in the form in which such material is furnished to security holders and the Commission, shall be sent to the issuer not later than the date such material is first published or sent or given to any security holders.
 15 U.S.C.A. § 78n(d) (1976).
 
 
 [5]
 The full text of section 14(e) provides:
 It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purpose of this subsection, by rules and regulations define, and prescribe means fraudulent, deceptive, or manipulative.
 15 U.S.C.A. § 78n(e) (1976).