**SANTA FE GAMING CORPORATION, a Nevada corporation, Plaintiff,**

v.

**HUDSON BAY PARTNERS, L.P., a Delaware limited partnership, and David H. Lesser, Defendants.**

**No. CV–S–99–00298–JBRLRL.**

United States District Court, D. Nevada.

May 13, 1999.

Dean S. Kitchens, Kevin Rosen, Gibson, Christopher D. Dusseault, Marshall Sprung, Gibson, Dunn & Crutcher, LLP, Los Angeles, CA, Kirk B. Lenhard, Jones Vargas, Las Vegas, NV, for plaintiff.

Donald H. Chase, Morrison, Cohen, Singer & Weinstein, New York, NY, Dennis Kennedy, Lionel, Sawyer & Collins, Las Vegas, NV, for defendant.

## ORDER

RAWLINSON, District Judge.

On April 12, 1999, Plaintiff Santa Fe Gaming ("Santa Fe") moved (# 31) for a preliminary injunction to prevent Defendants Hudson Bay Partners ("Hudson") and David Lesser from voting their shares of preferred stock to elect two new board members at the next shareholder meeting. Santa Fe claims that Defendants failed to appropriately file a Schedule 13D as required by the Securities Exchange Act of 1934. The 1934 Act was amended by the Williams Act to include Section 13(d), codified at 15 U.S.C. § 78m(d), which provides that any person, or group of persons, after acquiring more than 5% of a class of registered voting equity securities, must file within ten (10) days with the appropriate

parties a Schedule 13D disclosing the identity of the person filing, the number of shares owned by them, the source of the funds used to purchase the shares, and the purpose of the purchase. Santa Fe also seeks to enjoin Defendants from purchasing any additional Santa Fe stock and from further violating Section 13(d).

On April 22, 1999, Defendants opposed (# 50) Santa Fe's motion. Defendants claim that they were not required to file a Schedule 13D. Alternatively, Defendants claim that even if they were required to file a Schedule 13D, they properly filed a Schedule 13D as a precaution. On April 26, 1999, Santa Fe replied (# 53) to Defendants' opposition. A hearing was held on the matter on April 27, 1999. Santa Fe and Defendants were both represented by counsel at the hearing.

## FACTS

Plaintiff Santa Fe Gaming (Santa Fe) is a Nevada Corporation. Defendant Hudson Bay ("Hudson") is a Delaware Limited Partnership. Hudson, along with Defendant David Lesser, general partner of Hudson, owns more than 33% of Santa Fe's preferred stock.

In the fall of 1997, Lesser as an employee of Crescent Real Estate Equities Ltd., "Crescent" began exploring investment opportunities in the Las Vegas gaming industry. As a result, Crescent entered a merger agreement with Station Casinos ("Station"). In late January 1998, Lesser discussed with Station the possibility of acquiring Santa Fe. Between January 1998 and June 1998, Lesser participated in a meeting between Station and Santa Fe to discuss a potential acquisition of Santa Fe by Crescent. In the course of those negotiations, Lesser was provided with certain confidential, non-public information. In a letter dated July 23, 1998, Santa Fe rejected Crescent's acquisition offer.

At the same time Lesser was negotiating the acquisition of the Santa Fe on behalf of Crescent, Lesser and Hudson began acquiring certain bonds (the "Pioneer Bonds") that had been issued by Pioneer Finance ("Pioneer"), a subsidiary of

Santa Fe. The Pioneer Bonds represented $60 million in long term debt guaranteed by Santa Fe, and were to mature on December 1, 1998.

In October and November of 1998, Pioneer sought consent of the holders of the Pioneer Bonds to forbear exercising remedies if the Pioneer Bonds were not paid by the maturity date. In a letter to Santa Fe dated January 4, 1999, Lesser disclosed that he had acquired $4.7 million of the 1998 bonds and was in contact with an entity that owned $6.5 million of the Pioneer Bonds. Lesser proposed that if Santa Fe wished to avoid bankruptcy, Santa Fe's Board would have to be reconfigured to consist of seven directors, four appointed by Hudson. On January 12, 1999, Santa Fe informed Lesser that it would take no action with respect to his proposal. Santa Fe has not paid the amount owed on the bonds. On January 14, 1999, Hudson, as holder of $4.7 million of the Pioneer Bonds, commenced an involuntary bankruptcy proceeding against Pioneer and Santa Fe.

At the same time, beginning on December 30, 1997, Defendants began to purchase preferred shares of stock in Santa Fe (the "Preferred Shares"). The rights of shareholders acquiring the Preferred Shares (the "Preferred Shareholders") are set forth in a Certificate of Designation (the "Certificate"). The Certificate provides that Preferred Stock "shall have a liquidation preference of $2.14 per share plus accrued and unpaid dividends." Certificate, p. 6, ¶ 7(a). Dividends were to be paid semi-annually at the rate per annum per share (the "Dividend Rate") initially set at 8% of $2.14 plus accrued unpaid dividends. Certificate, p. 1–2, ¶ 2(a). The Certificate also provided for increases in the Dividend Rate with a cap of 16% per annum per share. *Id.* Santa Fe had the option of redeeming the Preferred Shares by paying the liquidation preference. Certificate, p. 3, ¶ 3(a). Upon redemption, dividends would no longer accrue and the

Preferred Shares would cease to be outstanding. *Id.*

Preferred Shareholders were to have no general voting rights in Santa Fe. Certificate, p.5, ¶ 5(a). The Certificate, however, provided that Preferred Shareholders could vote on certain extraordinary matters that were of special concern to Preferred Shareholders. *Id.* at ¶ 5(b). Preferred Shareholders could vote on changes in the number of authorized shares or proposed amendments to the articles of incorporation, when either would materially and adversely affect any preference or any right to those Preferred Shareholders. *Id.* Also, if at any time dividends in an amount equal to four dividend payments accrued and remained unpaid, Preferred Shareholders, as a class, would be entitled to elect two (2) special directors to the Santa Fe Board. *Id.* at ¶ 5(c). Upon payment of all dividends in arrearage, Preferred Shareholders would be divested of this voting right and the special directors would be thereupon terminated. *Id.*

Lesser in a deposition in another case testified that he purchased the stock "strictly for investment purposes." Santa Fe alleges, however, that Defendants purchased the stock as part of a plan to take control of Santa Fe. Santa Fe claims that Lesser's actions as an employee of Crescent, which is also a limited partner in Hudson, and Lesser's actions with regards to the Pioneer Bonds clearly indicate Lesser's desire to obtain control of Santa Fe.

Santa Fe further offers Lesser's copy of Santa Fe's 1997 Form 10–K (the "Form 10–K") as further proof of Lesser purpose in purchasing the Preferred Stock. In its Form 10–K, Santa Fe disclosed that if it failed to pay four consecutive semi-annual dividends, Preferred Shareholders would be able to appoint two directors to Santa Fe's board. Lesser underlined and bracketed this disclosure. The Form 10–K also disclosed that no such dividends were paid in 1997. The fourth accrual matured on September 30, 1998. Santa Fe did not pay dividends on September 30, 1998.

By September 30, 1998, Defendants owned more than 5% of the outstanding Preferred Shares. Between October 22, 1998 and January 25, 1999, Defendants acquired an additional 1,240,800 or 14% of the Preferred Shares. On January 15, 1999, Santa Fe notified Defendants that Preferred Shareholders were entitled to elect two (2) directors. Lesser, however, had become aware of Preferred Shareholders' right to elect two (2) directors from his copy of the Form 10–K. Also, in the January 4th letter from Lesser requesting restructuring of the Santa Fe Board of Directors, Lesser indicated that he was aware that Preferred Shareholders would be able to appoint two directors.

On January 25, 1999, Defendants filed their first Schedule 13D. The Securities Exchange Act of 1934 was amended by the Williams Act to include Section 13(d), codified at 15 U.S.C. § 78m(d), which provides that any person, or group of persons, after acquiring more than 5% of a class of registered voting equity securities, must file within ten (10) days with the appropriate parties a Schedule 13D disclosing the identity of the person filing, the number of shares owned by them, the source of the funds used to purchase the shares, and the purpose of the purchase. Defendants filed four amendments to their Schedule 13D, the last on March 19, 1999. In their Schedule 13D, Defendants disclosed Hudson and Lesser as the persons filing the Schedule 13D. Defendants further disclosed that Hudson used funds from its working capital and margin borrowing to acquire Hudson's Preferred Shares and that the personal funds of Mr. Lesser were used to purchase his Preferred Shares.

Defendants' Schedule 13D additionally disclosed that the Preferred Shares were purchased for investment purposes. The Schedule 13D, however, also disclosed that Defendants had discussions with Santa Fe regarding merger, reorganization, liquidation, or a change in the present board of directors. Defendants' Schedule 13D further indicated that Defendants intended to

consider various alternative courses of action with respect to their stock including recommendations as to business strategies, acquisitions, dividend policies, pursing transactions involving a change in control of Santa Fe, and possibly the sale of all or a portion of Defendants shares. It also disclosed that Defendants own certain bonds guaranteed by Santa Fe and that Defendants have filed a petition to place Santa Fe in involuntary bankruptcy.

The fourth amendment to Defendant's Schedule 13D discloses that Defendants proposed a slate of four nominees for election to the board and proposed one nominee to the Board included in a slate proposed by the union representing Santa Fe's employees.

Santa Fe alleges that Defendants' Schedule 13D was untimely. Santa Fe argues that since Defendants had already acquired more than 5% of the Preferred Shares, Defendants were required to file their Schedule 13D on October 10, 1998, ten (10) days after Santa Fe failed to pay the fourth accrued dividend.

Santa Fe further alleges that Defendants' Schedule 13D was inadequate. Santa Fe claims that Defendants' Schedule 13D omitted to disclose that Defendants had an agreement with the union representing Santa Fe's employees as to how Defendants would vote their shares. Santa Fe further claims that Defendants omitted the source of Lesser's personal funds and Hudson's working capital and margin borrowing. Santa Fe also contends that Defendants omitted that the Preferred Shares were purchased to gain control of Santa Fe. Santa Fe further argues that Defendants were required to disclose the specific facts of how Defendants attempted to obtain control of Santa Fe. Santa Fe concludes that Defendants' inadequate Schedule 13D entitles Santa Fe to a preliminary injunction preventing Defendants from voting for the election of the two special directors at an upcoming shareholders' meeting. Santa Fe also seeks to enjoin Defendants from purchasing any additional Santa Fe stock and from further violating Section 13(d).

## PRELIMINARY INJUNCTION

■ In *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57, 59 n. 9, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975), the Supreme Court recognized that failing to file an appropriate Schedule 13D in violation of the Williams Act could support the grant of injunctive relief to prevent a shareholder who is currently in violation from acquiring further shares, exercising voting rights, or from further violations. The Supreme Court, however, held that such injunctive relief was only available upon satisfying "the traditional prerequisites of extraordinary equitable relief by establishing irreparable harm." *Id.* at 61, 95 S.Ct. 2069. In *Rendish v. City of Tacoma*, 123 F.3d 1216, 1219 (9th Cir.1997), the Ninth Circuit determined that "[t]raditional criteria for granting a preliminary injunction include: 1) a strong likelihood of success on the merits; 2) the possibility of irreparable injury to the plaintiff; 3) a balance of hardships favoring the plaintiff; and 4) the advancement of the public interest." The party moving for a preliminary injunction has the burden of showing a combination of either 1) probable success on the merits and the possibility of irreparable injury or 2) serious questions as to the merits are raised and the balance of hardships tips sharply in the movant's favor. *Id.; see also Nordyke v. Santa Clara County*, 110 F.3d 707, 710 (9th Cir.1997). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Baby Tam & Co. v. City of Las Vegas*, 154 F.3d 1097, 1100 (9th Cir.1998). "They are not separate tests but rather outer reaches of a single continuum." *Id.* Santa Fe argues that it is entitled to injunctive relief because it has shown probable success on the merits and the possibility of irreparable harm.

■ As Santa Fe bases its request for injunctive relief on Defendants alleged vio-

lation of Section 13(d) of the Security and Exchange Act of 1934, success on the merits can only be established if Defendants are required to comply with Section 13(d). If Defendants are required to so comply, this Court must then determine whether Defendants' actions are in violation of Section 13(d).

Section 13(d) is codified at 15 U.S.C. § 78m(d) and applies to the following:

(1) Any person who, after acquiring directly or indirectly the beneficial ownership of any equity security of a class which is registered pursuant to section 781 of this title ... is directly or indirectly the beneficial owner of more than 5 percent of such class....

Under the language of Section 13(d) only beneficial owners of "equity securities" are obligated to file the required statement. The term "equity security" is defined as "any stock or similar security; or any security convertible, with or without consideration, into such a security...." 15 U.S.C. § 78c(a)(11) (1997).

Additionally, the Security and Exchange Commission ("SEC") is authorized to exempt any acquisition or proposed acquisition of a security from the requirement of filing a Schedule 13D. See 15 U.S.C. § 78m(d)(6)(D). Pursuant to 17 C.F.R. § 240.13d–1(i), the SEC provided that equity securities do "not include securities of a class of non-voting securities."

The SEC does not define the term "non-voting securities." At first glance, the Preferred Shares owned by Defendants appear to be voting securities. While Preferred Shareholders have no general voting rights, these shares provide for voting rights on extraordinary matters which would materially and adversely affect the rights, powers or privileges of Preferred Shareholders. Preferred Shareholders also are able to elect two (2) additional special directors to Santa Fe's board of directors in the event that four dividend payments have accrued but remain unpaid.

On closer examination, however, the limited voting rights given to Preferred Shareholders are not the type of voting rights that would cause the Preferred Shares to be viewed as outside the scope of "non-voting securities." The Preferred Shares, in addition to being "equity securities" must also be a "class which is registered pursuant to section 781 of this title [title 15]" to be subject to the reporting requirements of Section 13(d). 15 U.S.C. § 78m(d). Section 781 requires registration of securities that are traded on a "national security exchange." National security exchanges, such as the New York Stock Exchange ("NYSE") and the American Stock Exchange ("AMEX"), however, require that the preferred stock of listed issuers must accord its holders the right to elect at least two members to the board upon default in the payment of fixed dividends after a specified period. See Joel Seligman, *Equal Protection in Shareholder Voting Rights: The One Common Share, One Vote Controversy,* 54 Geo. Wash.L.Rev. 687, 691, n. 32 (1986).

The SEC intended that the requirements of Section 13(d) not apply to "non-voting securities." Securities, however, must be listed on a national exchange to be subject to those requirements. As securities listed on the major national exchanges do not permit the listing of securities without any voting rights, the term "non-voting securities" must refer to those securities that have no voting rights other than those minimum voting rights required by national exchanges. Otherwise, the term "non-voting security" would not have its intended effect of excluding a certain class of securities from the requirements of Section 13(d) because non-voting securities would already be excluded due to their inability to be registered on a national exchange.

Likewise, the Preferred Shareholders' right to vote on extraordinary matters that would materially and adversely affect their rights is a mandatory limited voting right that does not exclude the shares from the scope of "non-voting securities." Most states require that businesses that are incorporated under their laws must provide

such voting rights. For example, Nevada, Santa Fe's state of incorporation, requires that any change in the number of authorized shares or proposed amendment that would alter or change any preference or any right to a class of outstanding shares must be approved by the vote of the majority of voting power of each class whose rights are affected. *See* N.R.S. § 78.207(3), § 78.390(3) (1997). Other states have similar requirements. *See* Del. Code Ann., tit. 8, § 242(b)(2) (1998); N.Y. Bus. Corp. Law § 804(a) (1999). As the securities regulated by Section 13(d) must be accorded limited voting rights due to the requirements of state law and the rules of the national exchanges, "non-voting securities," which the SEC intended to be an additional exclusion from the requirements of Section 13(d), must be those securities that have no general voting rights and are accorded only the minimum voting rights prescribed by law or the national exchanges.

█ The Preferred Shares held by Defendants are non-voting securities. The voting rights of Preferred Shareholders are limited to changes in the number of authorized shares or proposed amendments to the articles of incorporation, when either would materially and adversely affect any preference or any right to those Preferred Shareholders, the minimum rights required by Nevada law. Additionally, Preferred Shareholders' right to elect two (2) special directors in the event dividends remain unpaid for four dividend periods is consistent with the requirements of the national exchanges. The SEC, therefore, intended to exclude the Preferred Shares held by Defendants from the requirements of Section 13(d). As Defendants are not bound by the requirements of Section 13(d), Santa Fe cannot obtain injunctive relief on that basis. *See Portsmouth Square Inc. v. Shareholders Protective Committee*, 770 F.2d 866, 874 (9th Cir.1985) (no liability under Section 13(d), except to the extent that shareholder had a Section 13(d) filing obligation); *Calvary Holdings v. Chandler*, 948 F.2d 59, 64 n. 8 (1st Cir.1991) (if a shareholder is not re-

quired to file under Section 13(d), a precautionary filing, even if inadequate, cannot support a cause of action based on a violation of Section 13(d)).

Santa Fe agrees that the Preferred Shares initially were non-voting securities. Santa Fe argues, however, that once Defendants became entitled to vote for the special directors upon Santa Fe's failure to pay dividends, the Preferred Shares were transformed into voting securities. This argument is flawed on several grounds.

First, Santa Fe ignores the voting rights Preferred Shareholders have even if dividends are consistently paid. Preferred Shareholders are always entitled to vote on extraordinary matters that would materially and adversely their rights. If the right to vote alone were sufficient to exclude the Preferred Shares from being termed a non-voting security, Preferred Shareholders' right to vote on such extraordinary matters, which is not tied to dividend payments, would be sufficient to cause the Preferred Shares to be excluded from that category. As previously set forth, however, that conclusion would cause the exclusion "non-voting security" to be meaningless because no security would be excluded.

Next, under Santa Fe's theory, the SEC has created serious gaps in shareholder protection. Santa Fe claims that failure to pay the fourth dividend, automatically enables Preferred Shareholders to vote for the two (2) special directors. Santa Fe argues that under Section 13(d) shareholders that have acquired more than 5% of the Preferred Shares, are required to file a Schedule 13D report within ten (10) days after the fourth dividend is not paid as scheduled. As long as Santa Fe pays dividends, however, shareholders can continue to accumulate Preferred Shares, upwards to 100%, anonymously. The primary reason for requiring shareholders to report when they have only accumulated 5% of a class of stock is to inform other shareholders that someone may be attempting to control a class of stock well before it actu-

ally happens. *See Portsmouth Square,* 770 F.2d at 873 (Section 13(d) is primarily concerned with disclosure of potential changes in control resulting from new aggregations of stockholdings); *GAF Corp. v. Milstein,* 453 F.2d 709, 717 (2nd Cir. 1971) (Section 13(d) is an early warning system designed to alert investors in securities markets to potential changes in corporate control and to provide them with an opportunity to evaluate the effect of these potential changes) cert. denied, 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972); *Bath Indus., Inc. v. Blot,* 427 F.2d 97, 113 (7th Cir.1970) (the purpose of the filing and notification provisions of Section 13(d) is to give investors and stockholders the opportunity to assess the insurgents' plans before selling or buying stock in the corporation). Santa Fe's theory would prevent that notice. Additionally, Shareholders might not have any prior notice that a Preferred Shareholder would be able to control the election of the two special directors, if the shareholders' meeting is scheduled within ten (10) days after the fourth dividend is not paid.

The more likely explanation is that SEC did not overlook the aforementioned gap but rather decided that shares, such as the Preferred Shares, are not transformed into voting securities when the limited voting rights may be exercised but maintain their character as "non-voting securities." SEC regulations do not reflect the view that shareholders need to be informed about the accumulation of securities that are similar to the Preferred Shares. In *Rondeau,* the Supreme Court explained that the Williams Act, which includes Section 13(d), was enacted to insure that potential investors would be informed in the event of a tender offer or some other similar contest for control. 422 U.S. at 49, 95 S.Ct. 2069. Defendants, however, will not be able to take control in the same manner that one would when making a tender offer. Defendants, at most, will be entitled to elect two (2) of a total of nine (9) directors, no matter how many Preferred Shares they acquire. The right to elect those directors is also eliminated upon the payment of the

outstanding dividends. There simply is no chance that Defendants could seize control of the Santa Fe without notice to the other shareholders, which is the evil Section 13(d) was designed to prevent.

Santa Fe notes that plans to influence the election of two directors is sufficient control to make those shareholders subject to Section 13(d) to report those plans. *See General Aircraft Corp. v. Lampert,* 556 F.2d 90, 96 (1st Cir.1977) (shareholder subject to Section 13(d) must report control intention when shareholder has elected two of his own nominees to the board, proposed drastic changes regarding the business and corporate structure; and enlisted prospective nominees for a dissident slate of directors). Santa Fe argues that if the plan to elect two directors must be reported then the power to vote for two directors should cause Defendants to be subject to the Section 13(d) reporting requirements.

■ In *United States v. Evans,* 375 F.2d 730, 731 (9th Cir.1967), the Ninth Circuit, in a tax case, held that where all the characteristics of debt are present the fact that the holder participates in management does not convert an instrument into an equity stock. It must be remembered that the securities regulated by Section 13(d) are "equity securities." The term "equity" indicates ownership or a right to share in the profits of the corporation. *Id.; see also E.H.I. of Florida, Inc. v. Insurance Co. of North America,* 652 F.2d 310, 314 (3rd Cir.1981)(bonds are not equity securities because holders do not have an ownership right to share in profits). An ownership interest also cannot be terminable independent of the termination of the corporation. *Evans,* 375 F.2d at 731.

Preferred Shareholders do not share in the corporation's profits. The dividends paid on the Preferred Shares are calculated by a predetermined percentage rate. Additionally, the Preferred Shares may be redeemed at the election of Santa Fe by paying a redemption price. Once the re-

demption price is paid, Preferred Shareholders' rights terminate as the Preferred Shares are no longer deemed to be outstanding. Because the Preferred Shares do not share in profits and may be redeemed at the election of Santa Fe, those shares are more akin to debt than equity. Preferred Shares are only endowed with the limited voting rights necessary to insure that their priority position as debt is not affected. Preferred Shares cannot be used to obtain control of the equity of Santa Fe. Consequently, Defendants are not required to report under Section 13(d) because the Preferred Shares do not represent an equity interest in the Santa Fe.

Since Defendants were not required to report their Preferred Share holdings under Section 13(d), Santa Fe has not demonstrated either probable success on the merits or serious questions going to the merits. Injunctive relief on that basis, is therefore unavailable. Accordingly,

IT IS ORDERED that Santa Fe's motion for a preliminary injunction (# 31) is DENIED.